**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| SUZANNE ROSENBERRY, STACEY COFFEY, and OLIVER COFFEY,<br><br>                              Plaintiffs,<br><br>        vs.<br><br>SUZANNE ROBERTI, MARCO ROBERTI and JOHN ROBERTI, JR., individuals; and ROBERTI FOOD, LLC, Oregon limited liability companies,<br>                              Defendants. | Case No. 3:20-cv-00026-YY<br><br>JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT |

Counsel for the parties have conferred regarding the subject of this motion and have agreed to jointly submit this motion. Defendants are referred to collectively herein as "ROBERTI".

**MOTION**

The parties to this action jointly move for an Order:

1. Certifying for settlement purposes the Rule 23(b)(3) class of "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2013 who do not file a timely request to opt-out of the Class," including approving named plaintiffs Suzanne Rosenberry,

Stacy Coffey, and Oliver Coffey as the class representatives;

2. Preliminarily certifying an FLSA collective of "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective";

3. Approving Jon M. Egan, PC as class/collective counsel;

4. Preliminarily approving the settlement agreement (attached hereto) as fair, reasonable, and adequate;

5. Approving the notice attached as Exhibit C to the settlement agreement as the form of notice to be mailed to each class/collective member;

6. Authorizing a 60-day period for putative class/collective members to opt out, opt in, or file claims;

7. Setting a date for objections to be filed; and

8. Setting a date for hearing objections, if any, to the proposed settlement, as well as the proposed attorney fee and expenses award and proposed service payments to the class representatives.

This motion is supported by the Declaration of Jon M. Egan submitted herewith.

## A. Rule 23 Class Certification

The parties jointly move to certify the Rule 23 settlement class, *i.e.*, "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2013 who do not file a timely request to opt-out of the Class." Rule 23(a) restricts class actions to cases where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). These requirements are more commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998).

In the District of Oregon, as in many other districts, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or.*, N.A., 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 McLaughlin on Class Actions § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). This class is adequately numerous: 108 employees have been identified who, like the named plaintiffs, had applicable violations within the statute of limitations period.

Rule 23(a) also requires that "questions of law or fact [be] common to the class." Fed.R.Civ.P. 23(a)(2). Because "[t]he Ninth Circuit construes commonality liberally," "it is not necessary that *all* questions of law and fact be common." *West v. Circle K Stores, Inc.*, CIV-S-04-0438-WBS-GGH, 2006 WL 1652598, *3 (E.D. Cal. June 13, 2006). "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). This case includes common issues such as:

1. whether alleged bounced paychecks violate Oregon minimum-wage and/or overtime law;
2. whether alleged late paychecks violate Oregon minimum-wage and/or overtime law;
3. whether and to what extent defendants' alleged practice of failing to pay for breaks of fewer than 30 minutes violates Oregon law;
4. what deductions defendants made from employees' pay, and whether those deductions were required by law;
5. what defendants' tip policy was, whether that policy comports with applicable state and federal law, whether and to what extent the class and collective members

**Joint motion for preliminary class/collective approval**          Page 3

are entitled to the tips and gratuities that are left for them by the customers, what the terms of any tip pool agreement were, whether defendants breached that agreement, whether defendants' alleged acquisition of those tips and gratuities constitutes a bailment or trust or fiduciary relationship, whether defendants allegedly taking those tips and gratuities exercises unlawful dominion and control over those tips and gratuities so as to justly be required to repay the full value of the property, whether those tips and gratuities were allegedly obtained by defendants under duress, whether the alleged theft constitutes unjust enrichment, whether ex aequo et bono defendants should have to pay the alleged stolen tip amounts to the class members, and whether non-economic and punitive damages are appropriate; and

6. whether the alleged violations were willful, whether and to what extent each defendant is responsible for its and other defendants' alleged violations under a joint employment or other theory, and what remedies are available for the alleged violations.

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality requires that named plaintiffs have claims "reasonably coextensive with those of absent class members," but their claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality " 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.' " *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992) (citation omitted). Here, the three named plaintiffs have exactly the same type of alleged violations as the 108 other class members.

Finally, Rule 23(a) requires "representative parties [who] will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To resolve the question of legal adequacy, the court must answer two questions: (1) do the named plaintiff and his counsel have any conflicts of interest with other class members and (2) has the named plaintiff and his counsel vigorously prosecuted the action on behalf of the class? *Hanlon*, 150 F.3d at 1020. This adequacy inquiry considers a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of

interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir.1992). Here, there are no conflicts between plaintiffs or their counsel and the class; plaintiffs have faithfully represented the putative class members for over a year and a half; and their counsel is experienced in both wage-and-hour law and class and collective actions. See the Declaration of Jon M. Egan submitted herewith.

Because Rule 23(a)(3) already considers commonality, the focus of the Rule 23(b)(3) predominance inquiry is on the balance between individual and common issues. *Hanlon*, 150 F.3d at 1022; *see also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231 (1997) ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation"). Here, a common nucleus of facts and potential legal remedies clearly dominates this litigation. To the extent that any further individual issues may exist, they primarily involve damages. There is no indication that such issues would be anything more than "local variants of a generally homogenous collection of causes" that derive from the named plaintiffs' allegations. *Hanlon*, 150 F.3d at 1022. Such idiosyncratic differences, therefore, "are not sufficiently substantive to predominate over the shared claims." *Id.* at 1022−23.

In addition to the predominance requirement, Rule 23(b)(3) provides a non-exhaustive list of matters pertinent to the court's determination that the class action device is superior to other methods of adjudication. Fed.R.Civ.P. 23(b)(3)(A)-(D). These matters include:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the difficulties likely to be encountered in the management of a class action.

*Id.* Some of these factors, namely (D) and perhaps (C), are irrelevant if the parties have agreed to a pre-certification settlement. *Amchem*, 521 U.S. at 620, 117 S.Ct. 2231. The parties are unaware of any concurrent litigation regarding the issues of the instant case. In the absence of competing lawsuits, it is also unlikely that other individuals have an interest in controlling the prosecution of this action or other actions.

### B. Preliminary FLSA Collective Certification

The parties jointly move to approve the FLSA settlement collective, *i.e.*, "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective."

The FLSA requires employers to pay the federal minimum wage for all hours worked; for tipped workers prior to March 24, 2018, tips that the worker was required to contribute to an invalid tip pool violate the FLSA if they exceed the amount by which the worker's wages exceed the federal minimum wage. *See* former 29 U.S.C. § 203(m). After that date, the FLSA was amended to allow mandatory tip sharing with all employees (but still not with employers, managers, supervisors). The FLSA provides that an aggrieved employee may bring a collective action on behalf of himself and other employees "similarly situated" based on an employer's failure to adequately pay wages in accordance with the Act's requirements. 29 U.S.C. 216(b). The FLSA limits participation in a collective action to only those parties that "opt-in" to the suit. *See Id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is

brought"); *see also Wright v. Linkus Enterprises*, 259 F.R.D. 468, 475 (E.D.Cal.2009). To maintain a collective action under the FLSA, a plaintiff must demonstrate that the putative collective action members are similarly situated. *Id.; Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 535–36 (N.D.Cal.2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004).

Plaintiffs have made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Leuthold*, 224 F.R.D. at 468. Specifically, plaintiffs allege that defendants uniformly required tipped employees to contribute tips to a tip pool that was distributed to the back of the house and to owners and managers. Plaintiffs' collective action under the FLSA is therefore appropriate for conditional certification.

## C. The Proposed Settlement

The parties have agreed to a gross settlement figure of $99,000, to be paid in three installments. After preliminary discovery, that figure is estimated to be the maximum that the one-location restaurant will bear, especially given the current economic climate.

The settlement provides for plaintiffs' counsel to petition the Court for a common-fund award of attorney fees not to exceed one third of the gross settlement figure (*i.e.*, $33,000); the costs for plaintiffs' counsel to administer the settlement are included within this figure. The settlement also provides for the named plaintiffs to petition the Court for service payments not to exceed $5,000.

Under the settlement, each class member who does not opt out is entitled to a Guaranteed Payment of $200, regardless of whether or not they submit a claim.

Each tipped class member who files a claim will be entitled to an additional $183.33, and each collective member who opts in will be entitled to an additional $300.

**Joint motion for preliminary class/collective approval**      Page 7

Unclaimed funds in these categories will revert to defendants.

Finally, any residual funds, as defined in the settlement agreement, will be distributed to the Northwest Workers' Justice Project, a local 501(c)(3) nonprofit dedicated to education and enforcement of employee rights.

## D. Settlement Approval

Rule 23(e) provides, in part, that "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." When a district court evaluates a class action settlement under Rule 23(e), the court must determine whether the settlement is fundamentally fair, reasonable, and adequate. *In re Syncor ERISA Litigation*, 516 F.3d 1095, 1100 (9th Cir. 2008). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *Id.*; *see also* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:4 (12th ed. 2015) ("In the context of reviewing a proposed class action settlement, the district court has a special duty to act as guardian for the interests of absent class members because they are not present but will be bound by the disposition of the case.").

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "But where, as here, class counsel negotiates a settlement agreement before the class is even certified, courts 'must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations.' " *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)). "In such a case, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry

than may normally be required under Rule 23(e).' " *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The parties have exchanged extensive information and documents with an eye on resolving the case voluntarily rather than engage in further motion practice, formal discovery, and trial preparation.

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(3); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

When the parties negotiate the settlement agreement before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quotation marks and citation omitted). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class

action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

In evaluating the acceptability of a class settlement, courts evaluate all relevant factors, according to the needs of the particular case. These include, but are explicitly not limited to, (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement. *In re Bluetooth Headset Products Liab. Litig*., 654 F.3d 935, 946 (9th Cir.2011), citing *Churchill Vill., L.L.C. v. Gen. Elec.,* 361 F.3d 566, 575 (9th Cir.2004) and *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1375 (9th Cir.1993).

In addition, for class settlements reached before formal class certification, the Court must also review the proposed settlement for signs of collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). These could include:

(1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

(2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

(3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

While it is true that some of the settlement funds may revert to defendants, none of

the un-awarded attorney fees or service payments will do so—those amounts will go to the class members. The parties will further address the remaining elements of the collusion analysis in their papers submitted in support of final approval of the settlement, following the opt-in/opt-out/claims/objection periods.

The parties have evaluated and discussed several potential issues with the claims and defenses at issue in this case, how they might play out at trial, and possible methods to account for various strengths and weaknesses in the settlement value of the case. The factors considered in negotiating the settlement amount included the potential non-viability of the wrongful deduction claims; potential legal questions regarding the availability or non-availability of multiple penalties; the relatively small amounts of the actual underlying deduction violations; potential difficulty in establishing willfulness (a requirement for penalty wages); and, perhaps most importantly, the additional time and expense that would be required to take this case through trial. After that analysis, the parties all believe that this is a fair and adequate settlement for both the class and collective members.

For the reasons set forth above, the parties jointly move for an Order pursuant to Fed.R.Civ.P. 23(e):

1. Certifying for settlement purposes the Rule 23(b)(3) class of "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2013 who do not file a timely request to opt-out of the Class," including approving named plaintiffs Suzanne Rosenberry, Stacy Coffey, and Oliver Coffey as the class representatives;

2. Preliminarily certifying an FLSA collective of "all current and former hourly

restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective";

3. Approving Jon M. Egan, PC as class/collective counsel;

4. Preliminarily approving the settlement agreement (attached hereto) as fair, reasonable, and adequate;

5. Approving the notice attached as Exhibit C to the settlement agreement as the form of notice to be mailed to each class member;

6. Authorizing a 60-day period for putative class/collective members to opt out, opt in, and make claims;

7. Setting a date for objections to be filed; and

8. Setting a date for hearing objections, if any, to the proposed settlement, as well as the proposed attorney fee and expenses award and proposed service payments to the class representatives.

Respectfully Submitted by:

JON M. EGAN, PC

DATED: June 15, 2021                    *s/ Jon M. Egan*
By_____
Jon M. Egan, OSB No. 002467
jegan@eganlegalteam.com
Attorney for Plaintiffs

JACKSON LEWIS P.C.

DATED: June 15, 2021            *s/ Mark Crabtree by Jon M. Egan with email permission*
By_____
Mark A. Crabtree, OSB No. 015070
Mark.Crabtree@jacksonlewis.com
Attorneys for Defendants

## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement, dated May 21, 2021 (this "<u>Settlement Agreement</u>" or "<u>Settlement</u>"), is entered into by and between Suzanne Roberti, Marco Roberti, John Roberti, Jr., and Roberti Food, LLC (collectively "<u>GILDAS</u>" or "<u>defendants</u>"), on the one hand, and Suzanne Rosenberry, Stacy Coffey, and Oliver Coffey (the "<u>Class Representatives</u>"), on behalf of themselves and on behalf of similarly situated putative class members (together with the Class Representatives, the "<u>Class Members</u>") and putative collective members (together with the Class Representatives, the "<u>Collective Members</u>"), on the other hand. GILDAS and the Class and Collective Members are collectively referred to herein as the "<u>Parties</u>," or, as to each, a "<u>Party</u>."

## RECITALS

**WHEREAS**, on November 29, 2019, the Class Representatives filed with the Circuit Court of the State of Oregon for the County of Multnomah (the "<u>Multnomah County Court</u>") a class-action complaint commencing an action against GILDAS, captioned *Suzanne Rosenberry, Stacey Coffey, and Oliver Coffey v. Suzanne Roberti, Marco Roberti, John Roberti, Jr., and Roberti Food, LLC,* Case No. 19CV51287, asserting that GILDAS violated Oregon and federal wage and hour laws by allegedly (a) bouncing paychecks, (b) paying paychecks late, (c) failing to pay for breaks that the law requires be paid, (d) making wrongful deductions from employee pay, and (e) engaging in tip theft;

**WHEREAS**, on January 7, 2020, the Multnomah County Court action was removed to the Oregon District Court and assigned case number 3:20-cv-00026-YY;

**WHEREAS**, both significant formal and informal discovery was conducted by the Parties in connection with the claims;

**WHEREAS**, there exist significant, complex legal and factual issues regarding the application of wage and hour laws, the various cases and regulations interpreting such laws, and regarding the viability and collectability of the Action against GILDAS, both individually and as a putative class and collective, including:

- whether alleged bounced paychecks violate Oregon minimum-wage and/or overtime law;

- whether alleged late paychecks violate Oregon minimum-wage and/or overtime law;

- whether and to what extent defendants' alleged practice of failing to pay for breaks of fewer than 30 minutes violates Oregon law;

- what deductions defendants made from employees' pay, and whether those deductions were required by law;

- what defendants' tip policy was, whether that policy comports with applicable state and federal law, whether and to what extent the class and collective members are entitled to the tips and gratuities that are left for them by the customers, what the terms of any tip pool agreement were, whether defendants breached that agreement, whether defendants' alleged acquisition of those tips and gratuities constitutes a bailment or trust or fiduciary relationship, whether defendants allegedly taking those tips and gratuities exercises unlawful dominion and control over those tips and gratuities so as to justly be required to repay the full value of the property, whether those tips and gratuities were allegedly obtained by defendants under duress, whether the alleged theft constitutes unjust enrichment, whether *ex aequo et bono* defendants should have to pay the alleged stolen tip amounts to the class members, and whether non-economic and punitive damages are appropriate; and

- whether the alleged violations were willful, whether and to what extent each

DocuSign Envelope ID: DCE52856-92FF-45FC-A59B-B9D71E8D8513

defendant is responsible for its and other defendants' alleged violations under a joint employment or other theory, and what remedies are available for the alleged violations;

**WHEREAS**, the Class and Collective Representatives have the burden of proof on some of these issues and GILDAS has the burden on others, and the trial of this matter would likely be lengthy and complex, adding to the cost and potential delay;

**WHEREAS**, all Parties recognize that the outcome of the litigation with respect to all of the aforementioned issues is uncertain;

**WHEREAS**, to avoid extensive, costly, and uncertain litigation over these issues, after the Parties' significant good-faith, arm's-length negotiations regarding a possible consensual resolution of the Class and Collective Claims and any and all related or similar settleable claims, counterclaims and/or causes of action based on or arising out of any federal, state, or local statute, ordinance, or regulation, contract, or otherwise between the Parties hereto (collectively sometimes referred to herein as the "Litigation"), the Parties desire to enter into a final settlement and release of all settleable demands, claims, damages and causes of action between one another arising from or relating to the Litigation, whether known or unknown; and

**WHEREAS**, the Parties have agreed to settle any and all claims between one another relating to or arising out of the Litigation in accordance with the terms of this Settlement;

**NOW, THEREFORE**, as material consideration and inducement to the execution of this Settlement Agreement, and in consideration of the mutual promises, agreements and cooperation set forth herein, and other good and valuable consideration, the sufficiency of which is hereby acknowledged and intended to be binding, the Parties hereby agree as follows:

## 1. Hearings; Consents to Magistrate.

Within seven (7) days of the final signature on this agreement, both parties will consent to the jurisdiction of the Magistrate Judge assigned to this case. The Parties shall then file a joint motion for approval of the Settlement through a bifurcated hearing process (the "Motion"). The Motion shall request an initial hearing (the "Initial Hearing") at which time the Parties shall seek entry of an order from the Court preliminarily certifying a Rule 23 class and a FLSA collective action, preliminarily approving the Settlement, approving the form and manner of notice to the Class/Collective Members of the Settlement, including, among other things, their right to object to the Settlement in person or appear by counsel, and approving the form of notice to the Collective Members and opt-in form. The Parties shall also request that the Court designate dates thereafter as deadlines for opting into the FLSA collective, opting out of the Rule 23 class, submitting claim forms, or objecting to the Settlement, as well as a date for a fairness hearing (the "Fairness Hearing"). At the Fairness Hearing, the Court will consider the final approval of the Settlement, including the award of Class Counsel's Fees and the Service Payments (each as defined below).

## 2. Class and Collective Certification; Class Counsel; Class Representatives.

Upon execution of this Settlement Agreement, the Parties stipulate and agree to define and certify, in connection with the Litigation and the Motion, a Rule 23 class (the "Class"), comprised of all current and former hourly restaurant employees of GILDAS who received a paycheck for work performed in Oregon on or after November 29, 2013 who do not file a timely request to opt-out of the Class, as well as an FLSA collective (the "Collective"), comprised of all current and former hourly restaurant employees of GILDAS who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective; provided, however, that such class and collective shall be certified for settlement purposes only and without any admission on the part of GILDAS that class or collective certification is proper. In the event that this Settlement is not finally approved by the Court, the certification status of the class and collective returns to the *status quo ante*

to the extent permitted by the Court, and no additional class or collective action will be certified until the Class Representatives move for certification and the Court certifies a class and/or collective action.

## 3. <u>The Settlement Fund.</u>

A. <u>Definition</u>

The Claims shall be settled hereby and as provided herein. The Parties agree that GILDAS's liability will not exceed Ninety Nine Thousand Dollars ($99,000) (the "Settlement Fund"). Subject to Court approval, and on the terms and conditions set forth in his Agreement, GILDAS will pay and promise as follows:

1. GILDAS will put up a $51,000 fund against which the Class/Collective members can make claims. The formula the Parties used to determine each Class/Collective Members share of the $51,000 settlement fund is set forth in Exhibit B to this Agreement.
2. Service Payments to the three Class Representatives to be awarded by the Court but not to exceed $5,000 each. Any portion of these amounts that is not awarded by the Court will be distributed among the Qualified Claimants.
3. Subject to approval by the Court, GILDAS agrees to pay Class Counsel the sum of $33,000 as attorneys' fees, costs and expenses, and claims administration costs. Any portion of this agreed amount that is not awarded by the Court will be distributed among the Qualified Claimants.

The Settlement Fund represents the maximum amount that GILDAS will pay pursuant to this Settlement, inclusive of the allocation of the Settlement Fund to Class/Collective Members, Court-awarded Class Counsel's Fees, Court-awarded Service Payments. GILDAS shall not be called upon or required to contribute additional monies above the Settlement Fund under any circumstance whatsoever, with the sole exception of the contingent forgivable interest indicated in section 3.C.

i. The $51,000 in Settlement Funds consists of three subcategories of funds available to class and collective members:

a. Each Class member is entitled to $200 in Guaranteed Funds whether they file a claim/opt-in form or not, totaling $22,000.

b. In addition, Class/Collective members who file a claim/opt-in form will be entitled to additional Claimable Funds:

1) Rule 23 Claimable Funds, consisting of $11,000.

2) FLSA Claimable funds, which consist of $18,000;

iii. The Settlement Fund also allows for up to $33,000, in attorneys' fees, costs, disbursements, and settlement administration expenses, as discussed below in Section 5.

iv. The Settlement Fund also allows for up to $5,000.00 in a Service Payments to each Class Representative, as discussed below in Section 8.

B. <u>Payment</u>

Payments pursuant to this Agreement shall be made in three installments.

i. Within thirty (30) days of the Effective Date, as defined herein, GILDAS shall wire $33,000 to a segregated trust account to have been established by Class Counsel.
ii. Within six (6) months of the Effective Date, as defined herein, GILDAS shall wire $33,000 to a segregated trust account to have been established by Class Counsel.
iii. Within one (1) year of the Effective Date, as defined herein, GILDAS shall wire the

remaining amounts due (not to exceed $33,000) to a segregated trust account to have been established by Class Counsel.

### C. Interest; No Prepayment Penalty

    i. Because some of the settlement is being paid over time, this paragraph describes this Agreement's provision for contingent, potentially forgivable interest. The $99,000 gross settlement amount will accrue the statutory rate of 9% simple annual interest from the date of the latest signature on this settlement agreement. Following each payment in paragraph 3.B., the amount of principal on which interest runs will be reduced by the amount of that payment, with 9% simple annual interest accruing on the remaining amount due from the date of the payment. If all of the payments are received on or before the scheduled due dates, all accrued interest will be forgiven upon completion of the payment plan. If any payment is late, all accrued interest on all of the payments must be wired to the segregated trust account to have been established by Class Counsel within thirteen (13) months of the Effective Date.

    ii. There is no penalty for pre-payment of any amounts under this Agreement.

### D. Disbursement

    i. Upon receipt of the payment indicated above in 3.B.i., Class Counsel shall disburse the funds to his firm.

    ii. Upon receipt of the payment indicated above in 3.B.ii., Class Counsel will disburse the funds as follows: first, to any Service Payments awarded by the Court; the remaining portion of this payment will remain in the trust account until receipt of the final payment; and

    iii. Upon receipt of the payment indicated above in 3.B.iii., Class Counsel will distribute the funds to the Class/Collective Members as indicated in Exhibit B.

## 4. **Responsibilities of Class Administration.**

    In addition to calculating the individualized amounts of the Settlement Fund to be distributed to Class/Collective Members in accordance with the terms of this Agreement, Class Counsel will produce and mail all notices to be required for the Class/Collective Members (the "Class Notices"), receive and process the Class/Collective Members' opt-outs, objections, and claims, and prepare and distribute the settlement checks and IRS Form 1099-MISC ("1099 Forms"). Class Counsel shall certify to the Parties that such 1099 Forms have been properly mailed to Class/Collective Members on or before February 1 of the year following the final Settlement Fund disbursement. The address of Class Counsel will be used as the return address for the Class Notices. Class Counsel will submit a declaration in support of Final Approval of this Settlement identifying efforts in administering this settlement, including attaching copies of all of the opt-ins received. Fees and costs related to Claim Administration are included in the Settlement Fund.

## 5. **Class Counsel's Fees and Expenses.**

    Class Counsel may move the Court for an attorney fee/cost award of no more than $33,000, representing thirty percent of the gross amounts recoverable by the class and collective, plus an additional amount to cover Class Administration fees and costs ("Class Counsel's Fees"). GILDAS agrees not to oppose Class Counsel's request for this amount of Class Counsel's Fees. This figure is in addition to and separate from the amounts awarded to the class and collective members, and such fees shall not be deemed to have been recovered by such class and collective members. It is used for ease of calculation purposes and does not represent a contingent-fee recovery; instead, the figure is awarded in lieu of the lodestar and/or other statutory fee-shifting attorney fees to which Class Counsel asserts he would otherwise be entitled under a successful resolution of the underlying claims against GILDAS via litigation. Any Class Counsel's Fees awarded will be distributed as described in Section 3D, above. In the event that the Court orders a Class Counsel's Fees award of less than the

requested amount, that occurrence shall have no bearing on the validity or enforceability of this Settlement Agreement.

## 6. The Allocation of the Settlement Fund and Disbursement of the Settlement Fund Payments to Class/Collective Members.

### A. Allocation of the Net Settlement Fund.

The Settlement Fund payments shall be allocated to the individual Class/Collective Members as calculated by Class Counsel and reviewed and approved by counsel for GILDAS in accordance with the terms of this Agreement. The method used to calculate the Settlement Fund payment due to each Class/Collective Member is described in detail in Exhibit B.

### B. Returned Notices

In the event that any settlement notice is returned as undeliverable, Class Counsel shall promptly re-mail the returned item to the corrected address of the intended recipient as determined by postal forwarding address or through a search of a national database, if any. If a corrected address cannot be obtained for the intended recipient, or in the case of two returns attributable to any Class/Collective Member, the disbursement of the Guaranteed Funds due to that Class/Collective Member will be deemed Residual Funds and treated in accordance with Section 6E below.

### C. Returned Settlement Checks

In the event that any settlement fund disbursement is returned as undeliverable, Class Counsel shall promptly re-mail the returned item to the corrected address of the intended recipient as determined by postal forwarding address or through a search of a national database, if any. If a corrected address cannot be obtained for the intended recipient, or in the case of two returns attributable to any Class/Collective Member, the disbursement due to that Class/Collective Member will be deemed to be Residual Funds and treated in accordance with Section 6E below.

### D. Unclaimed Funds.

In the event that any Class Member opts out of this settlement or does not submit a claim for Claimable Funds, the portion of the Claimable Rule 23 Funds otherwise payable to such Class Member shall be deemed "Unclaimed Funds", and GILDAS need not include such Unclaimed Funds in its disbursement to Class Counsel upon final approval of the settlement per Section 3C above accordingly. In the event that any Collective Member does not submit an opt-in form, the Claimable FLSA Funds otherwise payable to such Collective Member shall similarly be deemed Unclaimed Funds.

### E. Residual Funds.

Separate from the Unclaimed Funds, to the extent there are any, which GILDAS need not wire to Class Counsel, in the event that there are any Settlement Funds remaining for any reason, including returned notices/settlement checks, any accrued interest, and settlement checks which are not deposited or negotiated within sixty days of their date of issuance (the "Residual Funds"), such Residual Funds will be donated to the Northwest Workers Justice Project, a local 501(c)(3) non-profit organization dedicated to employee education and rights, as a *cy pres* distribution. No portion of the Residual Funds shall revert to GILDAS for any reason or be disbursed to Class Counsel.

## 7. Notification of Possible Tax Consequences to Class/Collective Members.

The ultimate amounts of the net Settlement Fund payments allocated to each Class/Collective Member are aggregate figures resulting from and reflecting the Parties' good-faith negotiations regarding a number of unliquidated (and in some cases unknowable) categories of potential damages. However, due to the nature of the violations at issue, less than one percent of the funds due to each Class/Collective Member would be due to any actual unpaid back wages. Instead, the

vast majority of the payments includes provision for prejudgment interest, liquidated damages, penalty wages, noneconomic damages, and any and all other categories of potential recovery resulting from the Litigation. As such, and due to the inability to fix the relative amounts of such damage categories without further litigation, Class Counsel will issue IRS Form 1099s to Class/Collective Members, with the net amount of their Settlement Fund payments designated as "Other Income" in Box 3 of such forms—no tax withholdings from such funds will be made by either GILDAS or Class Counsel. Class Counsel will also provide each Class/Collective Member with a notice advising each Class/Collective Member to seek his or her own personal tax advice regarding the potential tax consequences of the net Settlement Fund payment and an explanation of Class Counsel's fees and accrued expenses. This notice will be included with each net Settlement Fund payment to the Class/Collective Members. No Party makes any representation to any other Party as to the possible tax treatment of any payment hereunder.

In the event that it is subsequently determined by the United States Internal Revenue Service or any other appropriate taxing authority (each a "Taxing Authority") that any Party owes any additional taxes with respect to any money distributed under this Settlement, it is agreed that the determination of any tax liability shall be between such Party and the Taxing Authority, and that no other Party shall be responsible for the payment of such taxes, including any interest and penalties.

## 8. Service Payments to Class Representatives.

As described in Exhibit B, the Class Representatives shall petition the Court for an additional $5,000 each for their service in this matter, the time and effort they have contributed to the case, their participation in discovery, the financial risks they undertook by asserting statutory claims on behalf of the Class/Collective Members, and the complete and total waiver of all claims against GILDAS. GILDAS agrees not to oppose this request. In the event that the Court ultimately awards a lesser amount, this Settlement Agreement shall remain valid and enforceable.

## 9. Released Claims of Class and Collective Members.

For the purposes of this Settlement, the term released claims ("Released Claims") shall include the Released Rule 23 Claims and the Released FLSA Claims.

The Released Rule 23 Claims include any and all claims, counterclaims and/or causes of action of any kind or nature that have been alleged, or that have a similar factual predicate to the claims alleged by the Class Representatives against the Released Parties (as defined below) in the Litigation, whether presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed or undisputed, legal or equitable, including, but not limited to, any claims and/or causes of action under, pursuant to, or derived from (i) any statute regulating hours of work, wages, the payment of wages, and/or the payment of overtime compensation; (ii) any contract; (iii) common law, including, but not limited to, claims for unjust enrichment and quantum meruit; and (iv) The Employee Retirement Income Security Act of 1974 ("ERISA") including, but not limited to, claims for benefits under any benefit plans subject to ERISA that arise from any act or omission that has been alleged or based upon a similar factual predicate to the claims alleged in the Litigation, and explicitly excluding any claims under the federal Fair Labor Standards Act; provided, however, that nothing contained herein shall be deemed to waive or release any claims which are allowed pursuant to this Settlement or any of the Parties' rights or obligations under this Settlement.

The Released FLSA claims include any and all claims, counterclaims and/or causes of action under the federal Fair Labor Standards Act that have been alleged, or that have a similar factual predicate to the FLSA claims alleged, by the Class Representatives against the Released Parties (as defined below) in the Litigation, whether presently known or unknown, fixed or not, contingent or non-contingent, liquidated or unliquidated, asserted or unasserted, matured or unmatured, disputed

or undisputed, legal or equitable.

The Released Claims shall be released and forever fully discharged as to GILDAS and all of their present and former parents, divisions, subsidiaries, affiliates, predecessors, successors and assigns, and their present and former directors, officers, employees, principals, investors, agents, insurers, shareholders, owners, attorneys, advisors, consultants, representatives, partners, joint ventures, independent contractors and vendors (collectively, the "Released Parties"). On the day of final approval of this settlement, the Released Rule 23 Claims shall be deemed released as to all Class Members who did not timely opt out. On the day of final approval of this settlement, the Released FLSA Claims shall be deemed released as to all Collective Members who timely submitted an opt-in form.

Ninety (90) days following the final wire transfer indicated in paragraph 3.B. of this Agreement (the "Release Date"), the Released Class Claims shall be deemed released as to all Class Members who did not timely opt out, and the Released FLSA Claims shall be deemed released as to all Collective Members who timely submitted an opt-in form.

## 10.    Reservation of Rights.

GILDAS expressly reserves the right to object to, offset, or oppose any and all claims, obligations, or causes of action, of any type, except those expressly allowed under this Settlement.

## 11. The Class/Collective Notice.

As noted above, Class Counsel shall prepare and distribute the Settlement Notices. Within fifteen (15) days of preliminary approval of this settlement, GILDAS shall deliver to Class Counsel an Excel spreadsheet containing the name, date of birth, social security number, last known mailing address, email address, and telephone number for each Class/Collective Member. Class Counsel's address will be used as the return address for the Settlement Notices so that any returned Settlement Notices will be returned to Class Counsel. Class Counsel shall mail the Settlement Notices by first-class mail to the Class/Collective Members at the addresses provided by GILDAS, at the date ordered by the Court, following the entry of an order by the Court preliminarily approving this Settlement. The Settlement Notice shall be in the form annexed hereto as Exhibit C or such substantially similar form as may be approved by the Court. At Class Counsel's sole discretion, Class Counsel may make neutral additional mail/email/telephone contact with Class/Collective members who have not yet responded to the Class Notice (whether opt-in, opt-out, making a claim, or objecting), to confirm that they received the notice and answer any questions they may have regarding the notice. In the event that a Settlement Notice is returned as undeliverable, Class Counsel shall re-mail the Settlement Notice to the corrected address of the intended Class/Collective Member recipient as determined by Class Counsel through postal forwarding or a search of a national database, if any. In the event that any re-mailed Settlement Notice is returned as undeliverable, (a) the portion of the Guaranteed Funds otherwise allocable to that Class/Collective Member shall be deemed Residual Funds and treated in accordance with Section 6E above; (b) the portion of the Claimable FLSA Funds otherwise allocable to that Class/Collective Member shall be deemed Unclaimed Funds and treated in accordance with Section 6D above; and (c) the unclaimed portion of the Claimable Rule 23 Funds that could have been claimed by that Class Member shall similarly be deemed Unclaimed Funds and treated in accordance with Section 6D above.

A. Contents of the Settlement Notice.

The Settlement Notice shall contain the following information, which shall be individualized for each Class/Collective Member, as appropriate:

- that the Settlement shall become effective only if it is finally approved by the Court;

- that, if so approved, the Settlement shall be effective as to all Collective Members who opt into the collective (for FLSA claims) and all Class Members who did not timely elect to opt out of the Class (for Rule 23 claims);

- the proposed Class Counsel's Fees and Class Representatives' Service Payment;

- that such Class Member has the right to object to the Settlement either in person or through counsel and be heard at the Fairness Hearing;

- that such Class Member has the right to opt out of the Settlement without waiving his or her claims against GILDAS;

- that upon Final Approval, all Released Claims (other than those claims to be paid under the terms of this Settlement) shall be waived as to all Class Members for Released Rule 23 Claims and as to all opt-in Collective Members for Released FLSA Claims, and that no person, including the Class/Collective Member, shall be entitled to any further distribution thereon; and

- that in order to claim the Class/Collective Member's Claimable Funds portion of the Settlement (both Rule 23 portion and FLSA portion), the Class/Collective Member must make a claim/opt-in by following the procedures laid out in Section 12 below.

## 12. Settlement Claims Process.

To make a claim for the Class/Collective Member's portion of the Claimable Rule 23 Funds and Claimable FLSA Funds, the Class Member must submit a claim to Class Counsel via US mail, fax, or cmail, including verifying his or her identity by: (1) indicating their name, year of birth, and last four digits of his or her social security number on a paper or electronic Claim/Opt-In Form; (2) and physically or electronically signing the Claim/Opt-In Form. Copies of the class/collective notice, and proposed Claim/Opt-In Form are attached hereto as Exhibit C. The Class/Collective Members will have 60 calendar days from the date of initial sending of the class notice to make a claim/opt-in for the Class/Collective Member's share of the Claimable Funds. Upon receipt of the Claim/Opt-In Forms, Class Counsel will confirm that the name, year of birth, and last four digits of the Class/Collective Member's social security number listed on the form match the information contained in GILDAS's records. Each tipped employee submitting a fully executed Claim/Opt-In Form shall be deemed a "Qualified Claimant." Class/Collective Members who fail to become Qualified Claimants will not receive any portion of the Claimable Funds. The Class Representatives are hereby deemed to have already submitted a claim/opt-in and shall be considered Qualifying Claimants for all purposes under this Settlement Agreement.

## 13. Objection to Settlement Procedures.

At or before such time as may be fixed by the Court, a Class Member may object to this Settlement by delivering timely written notice of such objection (a "Notice of Objection") to Class Counsel and filing such Notice of Objection with the Court. The Notice of Objection shall clearly specify the basis for such objection, the relief sought, and the grounds for such relief. Any Class Member who chooses to object to the Settlement Agreement may not opt out of the Settlement.

## 14. Opt-Out Procedures.

At or before such time as may be fixed by the Court, a Class Member may opt out of this Settlement by delivering timely written notice of such option to Class Counsel via mail, email, or facsimile. The notice of a Class Member's request to opt out of this Settlement must be dated, include the Class Member's full name, conventional or electronic signature, and state, "I wish to opt out of the *Rosenberry v. Roberti* settlement." Any Class Member who opts out of this Settlement retains his or

her rights to assert claims against GILDAS. The Guaranteed Funds allocable to any Class Member who opts out shall be deemed Residual Funds in accordance with Section 6E above. Class Counsel shall provide a report on the number of any individuals who opt out of this Settlement to counsel for GILDAS within 7 days of such request.

**15. Acceptance and Effectiveness of the Settlement.**

A.  Court Approval.

The effectiveness of this Settlement shall be subject to and contingent upon the entry of an order of the Court at the Fairness Hearing approving this Settlement and upon such order having become final and non-appealable (the date of such order becoming final and non-appealable, the "Final Approval Date"); provided, however, in the event that the Court or a court with competent jurisdiction determines that the Service Payments and/or Class Counsel's Fee provisions are unreasonable, the Parties shall amend such Service Payments and/or Class Counsel's Fee provisions so as to render the same reasonable to such court without modifying the liquidated amount of the Claims set forth in Section 3A.

B.  Effective Date.

The Effective Date of this Settlement is the Final Approval Date.

**16.  The Waiver and Release of any Released Claims by All Class/Collective Members if the Settlement Becomes Effective.**

A.  Class Representatives

Upon the Release Date, the Class Representatives and their respective predecessors, successors, and assigns (collectively, the "Class Representatives Releasing Parties"), shall be deemed to have settled, released, and extinguished completely any and all claims that they have, had, might have, or might have had against the Released Parties, including all Released Claims and any and all other common-law, statutory, equitable or other claims, whether or not such claims are or were based upon an identical factual predicate to the claims alleged in the Litigation.

B.  Class Members

Upon the Release Date, all other Class Members who did not timely opt out of this case, and their respective predecessors, successors and assigns (the "Class Member Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Released Claims that they have, had, might have or might have had against the Released Parties.

C.  Collective Members

Upon the Release Date, all Collective Members who timely opt into this case, and their respective predecessors, successors and assigns (the "Collective Member Releasing Parties") shall be deemed to have settled, released and extinguished completely any and all Released FLSA Claims that they have, had, might have or might have had against the Released Parties.

**17.    Termination of Settlement Agreement.**

If more than twenty (20) Class Members request exclusion from the Settlement Class, then GILDAS may, in its sole discretion, notify Class Counsel in writing that it has elected to terminate this Settlement Agreement, effective upon the giving of such notification. In order to be effective, such notification must be provided to Class Counsel within fourteen (14) days of GILDAS's being informed in writing by Class Counsel that more than twenty (20) Class Members have requested exclusion. In the event GILDAS elects to terminate this Settlement Agreement and the Settlement under this provision, the Parties and the Action will be returned to the *status quo ante* and this Settlement Agreement shall be null and void.

**18. No Litigation.**

Except as may be necessary to enforce the terms of this Settlement, each of the Class Representatives Releasing Parties, the Class Member Releasing Parties, the Collective Member Releasing Parties, and GILDAS agrees that she/he/it shall not commence or proceed with any action, claim, suit, proceeding, or litigation against any other Party, directly or indirectly, regarding or relating to the matters described herein, or take any action inconsistent with the terms of the Settlement.

**19. No Admission of Liability or Non-Liability.**

This Settlement is intended to settle and dispose of the Released Claims. Nothing herein shall be construed as an admission by any Party of any facts or liability or non-liability of any kind. GILDAS expressly denies any liability.

**20. Representations and Warranties.**

Each Party represents and warrants that upon Court approval of this Settlement it will have the legal right and authority to enter into this Settlement and the transactions and releases contemplated hereby.

**21. Miscellaneous.**

A. Jurisdiction.

The United States District Court for the District of Oregon shall have exclusive jurisdiction over this Settlement and continuing jurisdiction over any dispute or controversy arising from or related to the interpretation or enforcement of this Settlement.

B. Notices.

Except as otherwise specifically provided herein, any notice or other communication required or permitted to be delivered by any Party to any other Party under this Settlement shall be (i) in writing, (ii) delivered personally, by courier service, by certified or registered mail, first-class postage prepaid and return receipt requested, or by email if such email is not returned as undeliverable, (iii) deemed to have been received on the date of delivery, and (iv) addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate by a written notice delivered to the other Party):

If to GILDAS, to:

Mark A. Crabtree
Jackson Lewis P.C.
200 SW Market Street, Suite 540
Portland, OR 97201
Mark.Crabtree@jacksonlewis.com


If to Class/Collective Members or Class Counsel, to:

Jon M. Egan
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
JEgan@eganlegalteam.com

C. Amendments.

This Settlement may not be modified, altered, amended or supplemented by the Parties except by a written instrument that the Parties have signed with any required approval of the Court.

D. Integration.

The provisions contained in this Settlement constitute the entire agreement between the Parties with regard to the subject matter hereof. No Party hereto has relied upon any written or oral statement of any other Party or counsel thereof for any statement material to this Settlement other than as explicitly stated herein. This Settlement supersedes any and all agreements, whether written or oral, that may have previously existed between the Parties with respect to the matters set forth herein.

E. No Construction Against the Drafter.

The Parties agree that each of them has had the full opportunity to participate in the drafting of this Settlement and, accordingly, any claimed ambiguity shall neither be construed for nor against any of the Parties.

F. No Third-Party Beneficiaries.

This Settlement does not constitute a contract for the benefit of any third parties, any prior creditors or claimants of the Parties, or any nonparty, other than Class/Collective Members in relation to the provisions of this Settlement.

G. Headings.

The headings of this Settlement are for convenience only and are not part of the Settlement and do not in any way define, limit, extend, describe, or amplify the terms, provisions, or scope of this Settlement and shall have no effect on its interpretation. Where appropriate, the use of the singular shall include the plural, and vice versa, and any use of the masculine, feminine, and/or neuter genders shall include the others as well.

H. Counterparts.

This Settlement may be executed by the Parties in separate counterparts, each of which when so executed shall be deemed an original, and all of which, when taken together, shall constitute one and the same document. Delivery of an executed counterpart of a signature page of this Settlement by facsimile or electronic means (in PDF file or comparable format) shall be effective as delivery of an original executed copy of this Settlement.

I. Binding Nature of Settlement.

This Settlement shall be binding upon and shall inure to the benefit of the Parties and their respective successors, transferees, assigns, heirs, and estates.

J. Not a Novation

The Parties agree that this Settlement is not a novation, and that should GILDAS petition for bankruptcy prior to the Release Date hereof, plaintiffs retain ability to object to discharge or dischargeability based on the original asserted claims in the case.

[signature pages follow]

IN WITNESS WHEREOF, the Parties have executed and delivered this Settlement as of the date first written above.


_____
JOHN ROBERTI

_____
Suzanne Rosenberry (May 26, 2021 16:40 PDT)
SUZANNE ROSENBERRY


_____
SUZANNE ROBERTI

_____
Stacy Jo Coffey (May 26, 2021 14:32 PDT)
STACY COFFEY


_____
MARCO ROBERTI

_____
Oliver Coffey (May 26, 2021 22:54 PDT)
OLIVER COFFEY


ROBERTI FOOD, LLC


_____

By: ___John Roberti_____

EXHIBIT A


SETTLEMENT FUNDS FOR EACH CLASS/COLLECTIVE MEMBER


[REDACTED]

| Name | Guaranteed | Claimable FLSA | Claimable Rule 23 |
|---|---|---|---|
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 300.00 | 183.33 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |
|  | 200.00 | 0.00 | 0.00 |

| Name | Guaranteed | Claimable FLSA | Claimable Rule 23 |
|---|---|---|---|
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |

| Name | Guaranteed | Claimable FLSA | Claimable Rule 23 |
|---|---|---|---|
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 0.00 | 0.00 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 300.00 | 183.33 |
| | 200.00 | 0.00 | 0.00 |
| **Totals:** | **22,000.00** | **18,000.00** | **11,000.00** |

Exhibit A
Page 3 of 3

**EXHIBIT B**

**Method Used to Calculate Settlement Fund Payments Due to Class/Collective Members**

Class Counsel shall calculate the portion of the aggregate net Settlement Fund that will be distributed to each Class/Collective Member on an individualized basis in the following manner. The net Settlement Fund (after first being reduced on account of any Class Counsel's Fees, accrued and reasonably anticipated expenses, and any Service Payments awarded by the Court) will be allocated to each Class/Collective Member according to the following formula:

(a) If the Class/Collective Member does not opt out, the $200 in Guaranteed Funds allocable to that Class/Collective Member on Exhibit A; plus

(b) If a tipped Class Member submits a claim, the $183.33 in Claimable Rule 23 funds allocable to that Class member on Exhibit A; plus

(c) If a tipped Collective Member submits an opt-in, the $300 in Claimable FLSA funds allocable to that Collective Member on Exhibit A.

For their service in this matter, the time and effort contributed to the case, participation in discovery, and the financial risks undertaken by asserting statutory claims on behalf of the Class/Collective Members, the Class Representatives shall receive a Service Payment in an amount to be awarded by the Court, not to exceed $5,000 each, in addition to their share of the net Settlement Fund.

EXHIBIT C

PROPOSED FORM OF CLASS/COLLECTIVE NOTICE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

| | |
|---|---|
| SUZANNE ROSENBERRY, STACEY COFFEY, and OLIVER COFFEY, | Case No. 3:20-cv-00026-YY |
| Plaintiffs, | SETTLEMENT NOTICE |
| v. | |
| SUZANNE ROBERTI, MARCO ROBERTI, JOHN ROBERTI, JR., and ROBERTI FOOD, LLC, | Opt Out Deadline: ____, 2020 by 4:00 p.m. (PT) Opt In Deadline: ____, 2020 by 4:00 p.m. (PT) Objection Deadline: ____, 2020 by 4:00 p.m. (PT) |
| Defendants. | Hearing Date: ____, 2020 at ____ p.m. (PT) |

NOTICE TO CLASS AND COLLECTIVE OF (I) PROPOSED SETTLEMENT OF CLASS/COLLECTIVE ACTION CONCERNING STATE AND FEDERAL WAGE-AND-HOUR AND OTHER CLAIMS; (II) AWARD OF ATTORNEY FEES AND EXPENSES TO CLASS COUNSEL AND SERVICE PAYMENTS TO CLASS REPRESENTATIVES; (III) DATE OF COURT HEARING FOR FINAL APPROVAL OF PROPOSED SETTLEMENT AND AWARD OF ATTORNEY FEES AND EXPENSES AND SERVICE PAYMENTS, (IV) RIGHT TO OPT-OUT, OPT-IN, SUBMIT CLAIM, OR OBJECT TO THE SETTLEMENT AND CLASS COUNSEL'S REQUEST FOR ATTORNEY FEES AND EXPENSES AND SERVICE PAYMENTS AND TO APPEAR AT COURT HEARING, AND (V) **REQUIREMENT TO MAKE CLAIM/OPT-IN IN ORDER TO RECEIVE SHARE OF SETTLEMENT PAYMENT**

TO: All current and former hourly restaurant employees of GILDAS who received a paycheck for work performed in Oregon on or after November 29, 2013 (the "Class/Collective" or "Class/Collective Members").

### Introduction

1.  There is currently pending in the United States District Court for the District of Oregon (the "Court") the above-captioned action brought under state and federal wage and hour laws (the "Action"). The plaintiffs, Suzanne Rosenberry, Stacy Coffey, and Oliver Coffey (the "Class Representatives") on the one hand, and Suzanne Roberti, Marco Roberti, John Roberti, Jr., and Roberti Food, LLC ("GILDAS" and together with the Class Representatives, the "Parties"), have reached a proposed settlement to resolve the Class and Collective Litigation between them, memorialized in a Settlement and Release Agreement (the "Settlement"), under which the benefits described below will be provided to the members of the Class/Collective.

2.  This notice constitutes notice to the Class/Collective of (a) the proposed Settlement of the Action, (b) the request of Class Counsel (defined below) for the award of attorney fees and costs of $33,000, and a service payment to the Class Representatives of $5,000 each, (c) the date of the Court hearing for final approval of the proposed Settlement and award of Class Counsel's attorney fees and expenses and the service payments, (d) the right of each member of the Class/Collective to opt-out, opt-in, object to, or comment on the Settlement and Class Counsel's request for attorney fees and expenses and service payments and to appear at the hearing at which the Court will consider the final approval of the Settlement and Class Counsel's request for attorney fees and expenses and the service payments, and the required procedures for doing so, and (e) the requirement that Class/Collective Members submit a claim/opt-in in order to receive a share of the Claimable Funds, including the portion allocable to federal Fair Labor Standards Act claims. If you stay in the class and opt in to the collective, you will be legally bound by all class/collective orders and judgments, lose the ability to sue (or continue to sue) GILDAS, and (if you submit a claim) receive your share of the Claimable Funds. You will receive your share of the Guaranteed Funds unless you opt out. **If you wish to receive a share of the Claimable Funds, you will have to submit a claim/opt-in, as described below in How to Submit a Claim.** If you opt out of the class and do not opt into the collective, you will not receive any money or benefits awarded to the class/collective, but you will not be bound by the class/collective orders or judgments, and you will retain the ability to sue (or continue to sue) GILDAS. If you object to the settlement, the Court will consider your objections, but you will remain a Class Member and be bound by the class orders or judgments.

### Description of the Class Litigation

3.  On November 29, 2019, the Class Representatives filed with the Circuit Court of the State of Oregon for the County of Multnomah (the "Multnomah County Court") a class-action complaint commencing an action against GILDAS, captioned Suzanne Rosenberry, Stacey Coffey, and Oliver Coffey vs. Suzanne Roberti, Marco Roberti, John Roberti, Jr., and Roberti Food, LLC, Case No. 19CV51287, asserting that GILDAS violated Oregon and federal wage and hour laws by allegedly (a) bouncing paychecks, (b) paying paychecks late, (c) failing to pay for breaks that the law requires be paid, (d) making wrongful deductions from employee pay, and (e) engaging in tip theft. On January 7, 2020, the Multnomah County Court action was removed to the Oregon District Court and assigned its current case number, 3:20-cv-00026-YY

4.  In general, Oregon and federal law prohibit certain deductions from or theft of tips, prohibit deductions from employees'

wages, require timely payment of minimum wage and overtime, and require that final paychecks contain all earned and unpaid wages and be delivered by a statutory deadline.

5. GILDAS denies Plaintiffs' allegations in their entirety.

6. The Complaint and other contentions of the Class Representatives and GILDAS raise complex legal and factual issues regarding the application of wage and hour laws, the various cases and regulations interpreting such laws, and regarding the viability of the Action against GILDAS, both individually and as a class claim. The Court has not yet ruled on the merits of the Class Representatives' claims, nor has it ruled on whether the Action may proceed as a class or collective action.

7. The trial of this matter would likely be lengthy and complex, adding to the cost and potential delay. All Parties recognize that the outcome of the litigation with respect to all the issues is uncertain. To avoid extensive, costly and uncertain litigation over these issues, the Parties have agreed to the proposed Settlement presently being considered by the Court.

8. GILDAS has identified you, to the best of its knowledge, information and belief, as one of the individuals who are currently within the Class/Collective definition, *i.e.*, who worked on an hourly basis for GILDAS restaurant and received a paycheck for work performed in Oregon on or after November 29, 2013.

### The Proposed Settlement

9. The following description of the proposed Settlement is only a summary. In the event of any difference between this summary and the terms of the Settlement, the terms of the Settlement shall control. You may secure a copy of the complete Settlement, the request for settlement approval, the motion for attorney's fees and supporting documentation, and other relevant case documents from Class Counsel. The terms of the Settlement relevant to the Class/Collective Members may be summarized as follows:

### Summary of Settlement Terms

10. The Class/Collective shall be granted a gross settlement amount of 99,000 (the "Settlement Fund"). Each Class/Collective Member will received his or her portion of the Settlement Funds, if applicable, as discussed below. The Class Representatives shall request $5,000 each for their service in this matter in their capacity as such (the "Service Payment"). Class Counsel will request attorney fees in the amount of $33,000 as attorney fees and settlement administration fees and costs. The Settlement shall not become effective if the Court does not approve it. Class Members who do not opt out will receive their share of the Guaranteed Funds; Class/Collective Members who submit claims/opt-ins will also receive their share of the Claimable Funds.

11. If any Class Member does not submit a claim for Claimable Funds, these funds shall be deemed "Unclaimed Funds" and GILDAS will not pay these amounts. If any settlement fund disbursement is returned as undeliverable, or disbursement remains un-negotiated for 60 days, or interest accrues, or a Class Member opts out, or for any other reason funds remain undisbursed, such funds shall be deemed "Residual Funds." Residual Funds shall be donated to the Northwest Workers Justice Project, a 501(c)(3) nonprofit dedicated to worker rights education and enforcement.

12. In order to claim your share of the Claimable Funds, you must submit a claim (see section below on **How to Submit a Claim**).

### Class Counsel's Recommendation

13. Class Counsel recommends the Settlement, believing that it is fair, reasonable, and adequate to the Class.

### Class Counsel's Fees and Expenses

14. Under the proposed Settlement and subject to final Court approval, Class Counsel shall request attorney fees, costs, and settlement administration expenses of $33,000. You may object to the request of Class Counsel for attorney fees and expenses by filing an objection within the time and in the manner specified below. If the Court approves an attorney fees award of lower than that requested, it will not affect the viability of the Settlement or the amount that you receive.

### Release of Claims and Effect of Approval of Settlement Agreement

15. Upon resolution of the Action by the Court, the Settlement will result in Class Members who do not timely opt out releasing any and all non-FLSA claims, counterclaims, and/or causes of action against GILDAS and the Released Parties (as defined in the Settlement Agreement) of any kind or nature in any way related to the facts or claims that were alleged or that had an identical factual predicate to the claims alleged in the Action. It will also result in a release by the opt-in FLSA Collective Members of all FLSA claims, counterclaims, and/or causes of action against GILDAS and the Released Parties (as defined in the Settlement Agreement) of any kind or nature in any way related to the facts or claims that were alleged or that had an identical factual predicate to the claims alleged in the Action. The Release of Claims is more fully explained in the Settlement Agreement.

### How to Submit a Claim/Opt-In

16. To receive your share of the Claimable Funds, you will need to submit a claim/opt-in. You may do so by mailing, emailing, or faxing the enclosed Claim/Opt-In Form to Class Counsel at the address below. By submitting a claim/opt-in, or negotiating any settlement check associated with this case, you are waiving any right to proceed in any fashion for the claims released in this case.

### How to Opt-out or Object

17. If you believe that the proposed Settlement is unfair or inadequate or feel that Class Counsel's request for attorney fees and expenses and/or the Service Payments should not be approved, you may object to the Settlement and/or Class Counsel's request for attorney fees and expenses and/or the Service Payments by mailing by first-class mail, a detailed written statement bearing the caption of this action shown above on the first page stating your comment or objection, to (a) Class Counsel at the address below, and (b) the United States District Court for the District of Oregon, Mark O. Hatfield U.S. Courthouse, 1000 S.W. Third Ave., Portland, OR 97204. Objections must be mailed so as to be received no later than ____, 2020, and must include the caption of the action and your name, address, and telephone number together with a detailed statement of the basis for your objection and whether you wish to be heard personally or by counsel at the final hearing at which the parties will be requesting binding Court approval of the Settlement and the award of attorney fees and expenses and the service payments, as described above. If you object to the settlement, you may not opt out of the settlement and you will be bound by the Judge's rulings and orders.

19. You may also appear in person or by counsel at the final hearing described below.

20. If you choose not to be bound by this Settlement Agreement and do not wish to share in any of the benefits described herein, you may opt out of the Class by submitting a written, signed, and dated statement of your wish to opt out (including the date, your name, and signature, as well as a statement stating "I wish to opt out of the *Rosenberry v. Roberti* settlement.") by first-class mail, to Class Counsel at the address below. The written, signed, and dated opt-out statement must be received no later than _____, 2021 (the "Opt-Out Deadline"). All requests for exclusion received after the Opt-Out Deadline will not be effective, and such person will be a member of the Class.

### Final Hearing to Approve Settlement and Award Attorney fees and Expenses and Service Payments

21. The hearing for final consideration and approval of the Settlement and the award of attorney fees and expenses to Class Counsel and service payments to the Class Representatives is scheduled to take place on ____, 2021 at _____ .m. in Courtroom ____ of the United States District Court for the District of Oregon, 1000 SW Third Ave., Portland, OR 97204. That hearing may be changed or cancelled without further notice. If you wish to determine if the hearing is changed or cancelled, you may contact Class Counsel at the address shown herein.

### Other Information

22. All requests for more information, including a copy of the Settlement Agreement, should be sent to the Class Counsel at Jon M. Egan, PC, 547 Fifth Street, Lake Oswego, OR 97034-3009, *info@eganlegalteam.com*, FAX 866-311-5629.

23. While the Court has approved the sending of this notice, that does not indicate, and is not intended to indicate, that the Court has any opinion as to the respective claims or defenses asserted by the parties in the Class Litigation.

### Please do not call the Court concerning this matter.

## CLAIM/OPT-IN FORM

BY COMPLETING AND SIGNING THIS FORM, I AM MAKING A CLAIM FOR ALL OF MY CLAIMABLE FUNDS AND OPTING INTO THE FLSA COLLECTIVE ACTION PORTION OF THIS LAWSUIT.

NAME:_____

YEAR OF BIRTII:  _____

LAST FOUR DIGITS OF SOCIAL SECURITY NUMBER:_____

SIGNATURE: _____

Your current address is not required to make a claim/opt-in. However, it will help us make sure that your check is mailed to the right place:

_____

_____

_____

THIS FORM MUST BE SUBMITTED BY US MAIL, FAX OR EMAIL BY _____, 2021.

### CLASS COUNSEL CONTACT INFORMATION

JON M. EGAN, PC

547 FIFTH STREET

LAKE OSWEGO, OR 97034-3009

*INFO@EGANLEGALTEAM.COM*

FAX: 866-311-5629

REFERENCE: GILDAS SETTLEMENT

If you move, please keep us updated with your current mailing address.

# Final Gildas settlement agreement

**Final Audit Report**                                                                 2021-05-27

| | |
|---|---|
| Created: | 2021-05-26 |
| By: | Jon Egan (Jegan@eganlegalteam.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA7-s-T8Te5YgFBSVNjjsLubcfoTzNC6oQ |

## "Final Gildas settlement agreement" History

📄 Document created by Jon Egan (Jegan@eganlegalteam.com)
2021-05-26 - 9:15:58 PM GMT- IP address: 97.120.144.193

📧 Document emailed to Stacy Jo Coffey (sjcoffey1964@gmail.com) for signature
2021-05-26 - 9:17:01 PM GMT

📄 Email viewed by Stacy Jo Coffey (sjcoffey1964@gmail.com)
2021-05-26 - 9:25:33 PM GMT- IP address: 69.147.90.190

✍️ Document e-signed by Stacy Jo Coffey (sjcoffey1964@gmail.com)
Signature Date: 2021-05-26 - 9:32:58 PM GMT - Time Source: server- IP address: 71.193.198.42

📧 Document emailed to Suzanne Rosenberry (suzannerosenberry@yahoo.com) for signature
2021-05-26 - 9:33:00 PM GMT

📄 Email viewed by Suzanne Rosenberry (suzannerosenberry@yahoo.com)
2021-05-26 - 10:06:46 PM GMT- IP address: 75.164.81.181

✍️ Document e-signed by Suzanne Rosenberry (suzannerosenberry@yahoo.com)
Signature Date: 2021-05-26 - 11:40:54 PM GMT - Time Source: server- IP address: 107.77.212.137

📧 Document emailed to Oliver Coffey (olivermcoffey@gmail.com) for signature
2021-05-26 - 11:40:55 PM GMT

📄 Email viewed by Oliver Coffey (olivermcoffey@gmail.com)
2021-05-27 - 0:43:44 AM GMT- IP address: 66.249.84.92

✍️ Document e-signed by Oliver Coffey (olivermcoffey@gmail.com)
Signature Date: 2021-05-27 - 5:54:35 AM GMT - Time Source: server- IP address: 73.25.136.204

✅ Agreement completed.
2021-05-27 - 5:54:35 AM GMT

