**Jon M. Egan**, OSB 002467
Jegan@eganlegalteam.com
Jon M. Egan, PC
547 Fifth Street
Lake Oswego, OR 97034-3009
Telephone: (503) 697-3427
Fax: (866) 311-5629
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

| | |
|---|---|
| SUZANNE ROSENBERRY, STACEY COFFEY, and OLIVER COFFEY, | Case No. 3:20-cv-00026-YY |
| Plaintiffs, | |
| vs. | JOINT MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT |
| SUZANNE ROBERTI, MARCO ROBERTI and JOHN ROBERTI, JR., individuals; and ROBERTI FOOD, LLC, Oregon limited liability companies, | |
| Defendants. | |

# Table of contents

I. Final approval of settlement ..................................................................................... 6

  A. Notice to the Class ........................................................................................... 8

  B. Final Certification of Rule 23 class ................................................................. 9

    1. Rule 23(a) ................................................................................................ 11

      a) Numerosity ....................................................................................... 11

      b) Commonality ..................................................................................... 11

      c) Typicality ........................................................................................... 12

      d) Adequacy ........................................................................................... 13

      e) Ascertainability ................................................................................. 14

    2. Rule 23(b)(3) .......................................................................................... 14

      a) Predominance ................................................................................... 15

      b) Superiority ......................................................................................... 15

  C. Final FLSA Collective Certification ................................................................. 16

  D. Settlement Agreement .................................................................................... 17

    1. Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation and maintaining class action status through trial 17

    2. The amount offered in settlement ......................................................... 18

    3. The extent of discovery completed and the stage of the proceedings ............... 19

    4. The experience and views of counsel ................................................... 20

    5. Presence of a Government Participant ................................................... 21

    6. Reaction of the Settlement Class ........................................................... 21

    7. The absence of collusion or other conflicts of interest ........................ 22

      a) There is no disproportionate distribution to plaintiffs' counsel .................. 22

      b) The agreement does contain a clear sailing provision, but no kicker .......... 26

      c) There is no reversion of attorney fees ............................................ 27

    8. Application ............................................................................................. 28

      a) The notice process was fair and fairly implemented ...................... 29

      b) The case was fought before it was settled ..................................... 30

      c) Participation of mediator and course of negotiations ..................... 31

      d) The class achieved an excellent result ........................................... 31

II. Conclusion ............................................................................................................ 31

## Table of authorities

### Cases

Abdullah v. U.S. Sec. Assocs., Inc*., 731 F.3d 952, 956 (9th Cir. 2013) ................................. 9, 15

*Adams v. Inter–Con Sec. Sys.*, 242 F.R.D. 530, 535–36 (N.D.Cal.2007) ............................. 16

*Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012) ....................... 25

Allen v. Bedolla, 787 F.3d 1218, 1223 (9th Cir. 2015) ............................................................... 8

Amgen Inc. v. Conn. Ret. Plans & Trust Funds, 568 U.S. 455, 466 (2013) ...................... 10, 15

*Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013) .............. 18, 20, 24

Bateman v. Am. Multi-Cinema, Inc., 623 F.3d 708, 722 (9th Cir. 2010) ................................. 15

*Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, *7 (N.D. Cal. Apr. 15, 2015) .............................................................................................................................. 26

*Bell v. Consumer Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL 2672073, *12 (D Or June 21, 2017) .............................................................................................................................. 24

Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 258 (N.D. Cal. 2015) ................. 22, 30

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) .............................................................. 23

*Briseño v. Henderson*, No. 19-56297, 2021 WL 2197968, *6 (9th Cir. June 1, 2021) .......... 22

*Burden v. SeleciQuote Ins. Servs.*, 2013 WL 3988771, *5 (ND Cal Aug 2, 2013) ................ 24

Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) ................................................................ 10

*Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, *9 (ND Cal Dec 11, 2015) .............................................................................................................................. 24

Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) ....................................... 10

*Evans v. Jeff D., 475* U.S. 717, 734–35, 738 n. 30, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986) .. 23

*Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, *18 (ED Cal Nov 27, 2012) ................................................................................................................... 24

*Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (ED Cal Oct 31, 2012) ....................... 24

Giles v. St. Charles Health Sys., Inc., 294 F.R.D. 585, 590 (D. Or. 2013) .............................. 11

*Good v. Am. Water Works Co., Inc.*, No. CV-2:14-01374, 2016 WL 5746347, *7 (S.D.W. Va. Sept. 30, 2016) ................................................................................................................ 30

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1027 (9th Cir. 1998) ...................................... 7, 9, 13

Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) .......................................... 13

Hansberry v. Lee, 311 U.S. 32 (1940) ..................................................................................... 13

*Harris v. Vector Mktg. Corp.,* 2011 WL 4831157, *6 (N.D.Cal. Oct. 12, 2011) .................... 22

*Harris v. Vector Mktg. Corp.*, No. C-08-5198-EMC, 2012 WL 381202, *5 (N.D. Cal. Feb. 6, 2012) ................................................................................................................................ 25

In re Bluetooth *Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)..22, 24, 25, 27, 28, 29

*In re High-Tech Employee Antitrust Litigation*, 11-cv-02509-LHK, 2015 WL 5158730, *14 (N.D. Cal. Sep. 2, 2015) ................................................................................................. 26

*In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 12462472, at *6 (C.D. Cal. Nov. 3, 2014) ........... 15

In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019) .......................... 8, 10

In re Mego Fin. Corp., 213 F.3d 454, 459 (9th Cir. 2000) ................................................ 18, 19

In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ....................... 21

In re Pac. Enters. Sec. Litig., 47 F.3d 373, 378 (9th Cir. 1995) ............................................. 20

In re Painewebber Ltd. P'ships Litig., 171 F.R.D. 104, 125 (S.D.N.Y. 1997) .......................... 20

In re Syncor ERISA Litig., 516 F.3d 1095, 1100 (9th Cir. 2008) .............................................. 6

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 458 (C.D. Cal. 2014) ...................................................................... 27, 29

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) ............................................................................................................ 29

*Keegan v. Am. Honda Motor Co, Inc.*, No. CV-10-09508-MMM-AJWx, 2014 WL 12551213, *18 (C.D. Cal. Jan. 21, 2014) .......................................................................................... 26

Lane v. Facebook, Inc., 696 F.3d 811 (9th Cir. 2012) ........................................................ 6, 7, 9

*Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004) ............................. 16

Lilly v. Jamba Juice Co., 308 F.R.D. 231, 237 (N.D. Cal. 2014) ............................................ 14

*Lusby v. GameStop Inc.*, 2015 WL 1501095, *4 (ND Cal Mar 31, 2015).............................. 24

Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 588 (9th Cir. 2012)......................... 10, 11

*Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, *8 (ED Cal Aug 10, 2015).............................................................................................................. 24

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).... 17, 20, 21

*Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, *9 (N.D. Cal. Dec. 19, 2017) ................................................................................................................................25

Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982) ...................... 18

Ontiveros v. Zamora, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014) ...................................... 19

Ott v. Mortg. Inv'rs Corp. of Ohio, Inc., 65 F. Supp. 3d 1046, 1064 (D. Or. 2014) .......... 10, 14

Radcliffe v. Experian Info. Solutions Inc., 715 F.3d 1157, 1168 (9th Cir. 2013)........................7

Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009) ...................................7, 9, 26

*Romero v. Producers Dairy Food Inc.*, 2007 WL 3492841, *4 (ED Cal Nov. 14, 2007)...... 24

*Shames v. Hertz Corp.*, No. 07–CV–2174–MMA (WMC), 2012 WL 5392159, *14 (S.D. Cal. Nov. 5, 2012) .......................................................................................................... 28, 30

*Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *13 (C.D. Cal. Mar. 10, 2014) ........................................................................................................ 25, 28

*Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990) .. 23

*Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 2909429, *7 (N.D. Cal. May 19, 2016) ...................................................................................................................27

Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003)......................................................... 8

*Vasquez, v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010)........................... 24

Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)............................................9, 10, 11

Wang v. Chinese Daily News, Inc., 737 F.3d 538, 542 (9th Cir. 2013) ..................................... 9

Wilcox Dev. Co. v. First Interstate Bank of Or., N.A., 97 F.R.D. 440, 443 (D. Or. 1983) ...... 11

*Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997).................... 23

Williams v. Oberon Media, Inc., 468 F. App'x 768, 770 (9th Cir. 2012)................................ 14

Wolin v. Jaguar Land Rover N. Am., LLC, 617 F.3d 1168, 1175 (9th Cir. 2010).................... 13

*Wright v. Linkus Enterprises*, 259 F.R.D. 468, 475 (E.D.Cal.2009)..................................... 16

## Statutes

29 U.S.C. § 203(m) (former) ................................................................................................... 16

29 U.S.C. 216(b) ................................................................................................................... 16

## Rules

Fed.R.Civ.P. 23(a)(3)............................................................................................................. 13

Fed.R.Civ.P. 23(a)(4)............................................................................................................. 13

Fed.R.Civ.P. 23(e) .................................................................................................................. 6

## Treatises

1 McLaughlin on Class Actions § 4:5 (15th ed.) ..................................................................... 11
Manual for Complex Litigation (Fourth)........................................................................ 30
William B. Rubenstein, 1 Newberg on Class Actions § 3:3 (5th ed.) ...................................... 14

**Other Authorities**

Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 292–94 (2008) 21
Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law
    Enforcement in the Federal Courts*, 29 Berkeley J. Empl. Lab. Law 269, 294 (2008).... 29
Ellen C. Kearns, et al., *Employment Litigation: Emerging Trends in Wage & Hour
    Litigation After Dukes v. Wal-Mart*, 9 J.L. Econ. & Pol'y 347, 370–71 (2013) ................. 21

Counsel for the parties have conferred regarding the subject of this motion and have agreed to jointly submit this motion. Defendants are referred to collectively herein as "ROBERTI".

## MOTION

The parties to this action jointly move for an Order:

1. Finally certifying for settlement purposes the Rule 23(b)(3) class of "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2013 who do not file a timely request to opt-out of the Class";

2. Finally certifying an FLSA collective of "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective";

3. Finally approving the settlement as fair, reasonable, and adequate;

This motion is supported by the Declaration of Jon M. Egan submitted herewith. Also submitted herewith are plaintiffs' motion for award of attorney fees and service payments.

## I. Final approval of settlement

Under Rule 23(e) of the Federal Rules of Civil Procedure, "[t]he claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1100 (9th Cir. 2008). Thus, to approve a class action settlement, a court must find that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); *Lane v. Facebook, Inc.*, 696 F.3d 811, 818 (9th Cir. 2012).

The settlement must be considered as a whole, and although there are "strict procedural requirements on the approval of a class settlement, a district court's only role in reviewing the substance of that settlement is to ensure it is 'fair, adequate, and free from collusion.' " *Lane*, 696 F.3d at 818–19 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). There are a number of factors guiding this review, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id.* at 819. Courts within the Ninth Circuit "put a good deal of stock in the product of an arms-length [*sic*], non-collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

Class action settlements involve "unique due process concerns for absent class members who are bound by the court's judgments." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013) (quotation marks and citation omitted). When parties negotiate a settlement agreement before formal class certification, as in this case, the court should engage in "an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e)." *Id.* (quotation marks and citation omitted). This more "exacting review" is warranted "to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Lane*, 696 F.3d at 819.

The Ninth Circuit has recognized, however, that "[j]udicial review also takes place in

the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). Thus, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)).

## A. Notice to the Class

The Court originally granted preliminary approval to the parties' proposed notice procedure. *See* Dkt. 30. Class counsel carried out that procedure. Declaration of Jon M. Egan at ¶¶ 2–5 and Exhibit A.

Notice of the settlement was given to the settlement class by the best means practicable under the circumstances, including mailing and emailing the Notice to Class Members.

Each Notice provided Class Members with all required information including, among other things: (1) a summary of the Action and the claims asserted; (2) a clear definition of the Settlement Class; (3) a description of the material terms of the settlement; (4) the fact that no affirmative action was needed to receive the benefit of class membership, but notice that Class Members could opt out of the Settlement Class, as well as notice of the claim/opt-in procedure for FLSA/state tip claim participation; (5) an explanation of Class Members' opt-out and claim/opt-in rights, the date by which Class Members must opt out or submit claims/opt-ins, and information about how to do so; (6) explaining the release of claims should Class Members choose to remain in the Settlement Class and/or make a claim/opt-in; (7) instructions about how to object to the settlement and the deadline for Class Members to submit any objections; (8) instructions about how to

object to the requested attorney's fees, expenses, and service award and the deadline for Class Members to submit any objections; (9) the date, time, and location of the final approval hearing; (10) class counsel's contact information, by which Class Members could obtain more information on the settlement; (11) contact information for the Court; and (12) information about how Lead Counsel and the Class Representative would petition the court to be compensated. The notices were therefore sufficient. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012) (reaffirming that a class notice need only "generally describe[ ] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard" (alteration in original) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

## B. Final Certification of Rule 23 class

To certify a settlement class, the requirements of Rule 23 of the Federal Rules of Civil Procedure must be satisfied. *See Hanlon*, 150 F.3d at 1019. Under Rule 23, the plaintiff "must be prepared to prove" that each of the requirements of the Rule is satisfied. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23 sets forth more than a "mere pleading standard." *Id*. On the other hand, Rule 23 provides district courts with broader discretion to certify a class than to deny certification. *See Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 956 (9th Cir. 2013).

A party seeking class certification must satisfy each of the requirements of Rule 23(a) and at least one requirement of Rule 23(b). *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 542 (9th Cir. 2013). Under Rule 23(a), a district court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law and fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the

representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). In other words, a proposed class must meet the requirements of numerosity, commonality, typicality, and adequacy of representation. *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 588 (9th Cir. 2012). Rule 23 also requires, implicitly, that the members of the proposed class be ascertainable based on objective criteria. *Ott v. Mortg. Inv'rs Corp. of Ohio, Inc.*, 65 F. Supp. 3d 1046, 1064 (D. Or. 2014). Along with the five requirements of Rule 23(a), the party seeking to maintain a class action also must "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

The Rule 23 analysis is "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart*, 564 U.S. at 351 (quotation marks omitted); *Comcast Corp.*, 569 U.S. at 33-34. This "rigorous" review applies even when certification is for settlement purposes only. *See, e.g., In re Hyundai*, 926 F.3d at 556. Still, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* A district court, however, "*must* consider the merits if they overlap with the Rule 23(a) requirements." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011) (emphasis in original).

The parties agreed to certification of the class for settlement purposes, and the Court previously agreed that the class met the requisite factors in conditionally certifying the class for settlement purposes in the preliminary approval of the settlement. The Court, however, must now conduct a "rigorous" analysis of the factors.

## 1. Rule 23(a)

The requirements of FRCP 23(a) are met.

### a) Numerosity

In this district, there is a "rough rule of thumb" that 40 class members is sufficient to meet the numerosity requirement. *Giles v. St. Charles Health Sys., Inc.*, 294 F.R.D. 585, 590 (D. Or. 2013); *see also Wilcox Dev. Co. v. First Interstate Bank of Or., N.A.*, 97 F.R.D. 440, 443 (D. Or. 1983) (same); 1 *McLaughlin on Class Actions* § 4:5 (15th ed.) ("The rule of thumb adopted by most courts is that proposed classes in excess of 40 generally satisfy the numerosity requirement."). Class counsel sent Notice packets to 109 potential Class Members, as identified through ROBERTI's employment records. Egan Dec. at ¶ 2. This shows that the numerosity requirement is met.

### b) Commonality

To satisfy the commonality requirement, plaintiffs must show that the class members suffered the "same injury"—that their claims depend upon a "common contention." *Wal-Mart*, 564 U.S. at 350 (quotation marks omitted). "That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Class members, however, need not have *every* issue in common: commonality requires only "a single significant question of law or fact" in common. *Mazza*, 666 F.3d at 589; *see also Wal-Mart*, 564 U.S. at 359. The Class Members have the significant issues of law and fact in common, including:

1. whether alleged bounced paychecks violate Oregon minimum-wage and/or overtime law;

2. whether alleged late paychecks violate Oregon minimum-wage and/or overtime

law;

3. whether and to what extent ROBERTI's alleged practice of failing to pay for breaks of fewer than 30 minutes violates Oregon law;

4. what deductions ROBERTI made from employees' pay, and whether those deductions were required by law;

5. what ROBERTI's tip policy was, whether that policy comports with applicable state and federal law, whether and to what extent the class and collective members are entitled to the tips and gratuities that are left for them by the customers, what the terms of any tip pool agreement were, whether ROBERTI breached that agreement, whether ROBERTI's alleged acquisition of those tips and gratuities constitutes a bailment or trust or fiduciary relationship, whether ROBERTI allegedly taking those tips and gratuities exercises unlawful dominion and control over those tips and gratuities so as to justly be required to repay the full value of the property, whether those tips and gratuities were allegedly obtained by ROBERTI under duress, whether the alleged theft constitutes unjust enrichment, whether ex aequo et bono ROBERTI should have to pay the alleged stolen tip amounts to the class members, and whether non-economic and punitive damages are appropriate; and

6. whether the alleged violations were willful, whether and to what extent each defendant is responsible for its and other ROBERTI's alleged violations under a joint employment or other theory, and what remedies are available for the alleged violations.

Thus, the commonality requirement is satisfied.

**c) Typicality**

**Joint motion for preliminary class/collective approval**        Page 12

To meet the typicality requirement, plaintiffs must show that the named parties' claims or defenses are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Under the "permissive standards" of Rule 23(a)(3), the "representative's claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). To determine whether claims and defenses are typical, courts look to "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.* (quotation marks omitted); *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

In our case, the lead plaintiffs' claims are based on the same conduct as the claims of the Settlement Class, and all Class Members have the same or similar injury. Thus, lead plaintiffs present claims that are typical of the claims held by each Class Member.

## d) Adequacy

Rule 23(a)(4) states that before a class can be certified, a court must find that "the representative parties will fairly and adequately protect the interests of the class." This requirement turns on two questions: (1) whether "the named plaintiffs and their counsel have any conflicts of interest with other class members"; and (2) whether "the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020. The adequacy requirement is based on principles of constitutional due process; accordingly, a court cannot bind absent class members if class representation is inadequate. *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940);

*Hanlon*, 150 F.3d at 1020.

In our case, lead plaintiffs have shown that they understand and accept their responsibility as Class Representatives. Lead plaintiffs have not demonstrated interests that are adverse to the Class Members. There is no conflict of interest in this action, and there is no disagreement between plaintiffs' interests and those of the Class Members. Additionally, Class Counsel and lead plaintiffs have prosecuted this action for over two years.

### e) Ascertainability

Ascertainability, although "not expressly required" by Rule 23, is a threshold requirement for class certification. *Ott*, 65 F. Supp. 3d at 1064. A proposed class must be "precise, objective, [and] presently ascertainable." *See Williams v. Oberon Media, Inc.*, 468 F. App'x 768, 770 (9th Cir. 2012) (alteration added) (quotation marks omitted). Class members must be identifiable through "a manageable process that does not require much, if any, individual factual inquiry." *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 237 (N.D. Cal. 2014) (quoting William B. Rubenstein, 1 *Newberg on Class Actions* § 3:3 (5th ed.)). This requirement does not entail, however, that "*every* potential member ... be identified at the commencement of the action." *Id.* (quotation marks omitted) (emphasis added).

The Class Members here were identifiable from ROBERTI's employment records, and thus this requirement is met.

### 2. Rule 23(b)(3)

Rule 23(b)(3) requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

**Joint motion for preliminary class/collective approval**          Page 14

adjudicating the controversy." This analysis, in accord with Rule 23's "principal purpose" of "promot[ing] efficiency and economy of litigation," inquires into "the relationship between the common and individual issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication by representation." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963–64 (9th Cir. 2013) (quotation marks omitted).

### a) Predominance

The focus of the predominance inquiry is on "*questions* common to the class"— plaintiff need not, at this threshold, "prove that the predominating question[s] will be answered in their favor." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459, 468 (2013) (emphasis in original).

The only individualized issues in this case were those of damages, which do not defeat certification. The common issues predominate here.

### b) Superiority

The purpose of Rule 23(b)(3) is "to allow integration of numerous small individual claims into a single powerful unit." *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 722 (9th Cir. 2010).

Here, class counsel sent out 109 Notice packets, showing that there are many class members who have low-value claims. Although they may be entitled to attorney fees and costs if they prevail in an individual lawsuit, the individual claims likely are too small to justify the cost and effort of private counsel to file and prosecute individual actions. None of them have done so to date. Allowing this action to proceed as a class action is therefore the superior method of adjudicating the controversy given the number of class members and amount of damages at issue for each class member. *In re Hot Topic, Inc. Sec. Litig.*, 2014 WL 12462472, at *6 (C.D. Cal. Nov. 3, 2014).

## C. Final FLSA Collective Certification

The parties jointly move to finally approve the FLSA settlement collective, *i.e.*, "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective."

The FLSA requires employers to pay the federal minimum wage for all hours worked; for tipped workers prior to March 24, 2018, tips that the worker was required to contribute to an invalid tip pool violate the FLSA if they exceed the amount by which the worker's wages exceed the federal minimum wage. *See* former 29 U.S.C. § 203(m). After that date, the FLSA was amended to allow mandatory tip sharing with all employees (but still not with employers, managers, supervisors). The FLSA provides that an aggrieved employee may bring a collective action on behalf of himself and other employees "similarly situated" based on an employer's failure to adequately pay overtime wages. 29 U.S.C. 216(b). The FLSA limits participation in a collective action to only those parties that "opt-in" to the suit. *See Id.* ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought"); *see also Wright v. Linkus Enterprises*, 259 F.R.D. 468, 475 (E.D.Cal.2009). To maintain a collective action under the FLSA, a plaintiff must demonstrate that the putative collective action members are similarly situated. *Id.; Adams v. Inter−Con Sec. Sys.*, 242 F.R.D. 530, 535−36 (N.D.Cal.2007); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D.Cal.2004).

In our case, plaintiffs made "substantial allegations that the putative class members were subject to a single illegal policy, plan or decision." *Leuthold*, 224 F.R.D. at 468. Specifically, plaintiffs alleged that ROBERTI uniformly required tipped employees to

contribute tips to a tip pool that was distributed to the back of the house, and that one or more defendants took part in the tip pool though being ineligible to do so by law. Discovery has borne out that, regardless of their merits, defendants' policies applied to all of the collective members. Plaintiffs' collective action under the FLSA is therefore appropriate for final certification.

### D. Settlement Agreement

The Court considers the factors enumerated by the Ninth Circuit as relevant in evaluating whether a settlement agreement is fair, reasonable, and adequate.

### 1. Strength of Plaintiffs' case and the risk, expense, complexity, and likely duration of further litigation and maintaining class action status through trial

Several aspects of plaintiffs' claims and ROBERTI's defenses remain open questions of fact or law. Although plaintiffs are confident of the strength of their case, they acknowledge that there are non-frivolous potential defenses to their claims.

The central consideration for this factor is usually the expense of litigation. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Id.*

The parties agree that if this case had not settled, they would have had to engage in significant additional discovery and to file contested motions for conditional certification of the FLSA Collective and certification of the Rule 23 Class, likely cross-motions on summary judgment, and ROBERTI's presumptive motions to decertify the FLSA collective and Rule 23 class. These litigation steps would be expensive, complex, and protracted. The settlement avoids these expenditures of resources for all parties and the Court and provides Settlement Class Members with "certain and prompt relief," a

"significant benefit that [they] would not receive if the case proceeded." *See Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 446 (E.D. Cal. 2013). That is all the more true in today's uncertain climate related to COVID-19 and its ongoing effects on the economy. This factor weighs in favor of approval.

## 2. The amount offered in settlement

In considering the potential fairness of the recovery, courts often compare the total amount of recovery in a settlement to the estimated total amount of damages that the plaintiffs could recover if the case was litigated. *See, e.g., In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Nonetheless, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982).

The parties agreed to a gross settlement figure of $99,000, to be paid in three installments. That consists of a guaranteed fund of $21,800 ($200 per person [1]) to be distributed regardless of whether class members submit a claim, as well as additional claimable amounts of $483.33 for each of the front-of-the-house, tip-eligible class/collective members ($300 per person for FLSA damages and $183.33 per person for Claimable Rule 23 damages). Those figures respectively represent 100% of the potential unlawful deduction damages available to the class, and a smaller percentage

---

[1] In the motion for preliminary settlement approval [Dkt. 28], it was indicated that there were 110 class members, and therefore $22,000 in wrongful-deduction damages. During administration of the opt-in period, it was determined that two of the putative class members were actually the same person, who had been entered twice in ROBERTI's records under different names. We therefore use the correct totals in this motion for final approval.

(perhaps 10%) of the approximated [2] tip theft damages available to the class/collective, according to the facts alleged and plaintiffs' counsel's calculations performed on the available records from ROBERTI.

This settlement figure will pay the costs of recovery to Class Members, attorney fees and costs, any awarded service payments, and the costs to administer the Settlement, including giving notice to Class Members, printing and distributing three rounds of checks, and printing and distributing multiple 1099s following the tax years of the payments.

To date, no objections have been raised challenging the sufficiency of the amount offered in settlement. The amount of recovery is fair, adequate, and reasonable.

### 3. The extent of discovery completed and the stage of the proceedings

This factor is concerned with whether "the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp.*, 213 F.3d 454, 459 (9th Cir. 2000). Including its prelitigation demand-letter phase, this case was litigated for over two years. The parties engaged in significant discovery, including both formal and informal written discovery, including time and pay and tip records for over 110 employees, as well as large amounts of spreadsheet information and multiple rounds of explaining and refining calculations to reach the appropriate damage figures. The parties "carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. Oct. 8, 2014). This factor, therefore, supports approval.

---

[2] Because the distribution of tips was neither universally tracked nor uniformly recorded, several assumptions had to be made in the calculation of damages due for the employee tip claims.

**Joint motion for preliminary class/collective approval**          Page 19

### 4. The experience and views of counsel

" 'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997)). "This is because 'parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.' " *Id.* (alteration omitted) (quoting *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)). Absent fraud or collusion, courts can, "and should, rely upon the judgment of experienced counsel for the parties," when assessing a settlement's fairness and reasonableness. *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013). Lead counsel is an experienced litigator. ROBERTI are also represented by experienced counsel.

There are concerns here regarding the viability of the common-law tip-pool claims, which, while not unprecedented, are also somewhat novel. Similarly, ROBERTI have concerns about potentially establishing a precedent for future application to their business, and the accrual of attorney fees disproportionate to the amount in controversy. Other factors taken into account in negotiating the settlement amount include the availability or nonavailability of single or multiple penalties under Oregon law; the relatively small amounts of the actual underlying violations (with potential juror hesitancy to award large punitive awards thereon); the potential for any class certification not to survive through trial; and the non-insured nature of this action and potential to collect on a full-value judgment given this one-restaurant-location company's cash-flow issues related to the Covid-19 pandemic.

This factor supports approval.

### 5. Presence of a Government Participant

This case does not qualify for CAFA notice. This factor is therefore neutral.

### 6. Reaction of the Settlement Class

Of the 109 class members to whom notice packets were mailed and emailed, none

opted out, and to date, no one has objected to the settlement. 17 of the 58 front-of-the-

house class members submitted complete claims, which is 29.3% of the eligible

class/collective pool. That is above the typical opt-in rates in similar FLSA or

FLSA/state-claim hybrid cases. *See, e.g.*, Andrew C. Brunsden, *Hybrid Class Actions,*

*Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J.

EMP. & LAB. L. 269, 292–94 (2008) (noting a nationwide opt-in average of 15.71%); Ellen

C. Kearns, et al., *Employment Litigation: Emerging Trends in Wage & Hour Litigation*

*After Dukes v. Wal-Mart*, 9 J.L. ECON. & POL'Y 347, 370–71 (2013) ("[F]rankly,

employees are terrified of opting in. The opt-in rates in FLSA actions are varied but they

range from below 10% (in the worst cases) to 15 to 20% (in the typical case) because

people are worried that if they step forward, they'll be fired.")

The participation rate and payout percentage, along with the lack of any objections to

the settlement, provides a strong presumption that the settlement is fair, reasonable, and

adequate. *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D.

523, 529 (C.D. Cal. 2004) ("The absence of a single objection to the proposed Settlement

provides further support for final approval of the Proposed Settlement."); *In re*

*Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("By any standard,

the lack of objection of the Class Members favors approval of the Settlement."). Thus, as

of this writing, this factor weighs in favor of approval. After the objection deadline of

October 22, 2021, plaintiffs' counsel will file a supplemental declaration informing the

Court whether any objections have been made.

### 7.  The absence of collusion or other conflicts of interest

Courts considering a class settlement must examine whether the settlement was the "result of good faith, arm's-length negotiations or the result of fraud and collusion." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 258 (N.D. Cal. 2015). The Ninth Circuit has identified three signs of collusion: (1) class counsel receives a disproportionate distribution of the settlement, or when the class receives no monetary distribution but counsel is amply awarded; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds without objection by a defendant; or (3) the parties arrange for payments not awarded to revert to a defendant rather than to be added to the class fund. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). *See also, Briseño v. Henderson*, No. 19-56297, 2021 WL 2197968, *6 (9th Cir. June 1, 2021) (extending *Bluetooth* holding to post–class certification settlements). The Settlement is the product of arm's-length settlement negotiations that took place over several months. ROBERTI have continued to dispute the claims against them, and the action was litigated for almost two years before the parties reached their proposed Settlement.

### a)  There is no disproportionate distribution to plaintiffs' counsel

To analyze a settlement for disproportionate distribution, consistent with *In re Bluetooth,* the Court compares the payout to the class (both actual and expected) to the unopposed claim of fees by class counsel. S*ee, e.g., Harris v. Vector Mktg. Corp.,* 2011 WL 4831157, *6 (N.D.Cal. Oct. 12, 2011).

### 1)  Fees were proportionate compared to expected payout

Plaintiffs' counsel's expected fees in this case are reasonable.

**Joint motion for preliminary class/collective approval**          Page 22

Common-fund attorney fees are awarded as a percentage of the total benefit to the class, not just the amounts actually claimed by the class members. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 480 (1980) ("To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel."); *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar. We thus reverse and remand," citing *Boeing*.). "The Supreme Court has indicated that the parties to a class action properly may negotiate not only the settlement of the action itself, but also the payment of attorneys' fees." *Id.*, citing *Evans v. Jeff D.,* 475 U.S. 717, 734–35, 738 n. 30, 106 S.Ct. 1531, 89 L.Ed.2d 747 (1986).

Plaintiffs' counsel seeks 33% of the gross settlement fund as an award of attorney fees, costs, and nontaxable expenses. That is above the benchmark award in the Ninth Circuit. *Id.* ("[T]he attorneys for a successful class may recover a fee based on the entire common fund created for the class, even if some class members make no claims against the fund so that money remains in it that otherwise would be returned to the defendants. In *Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir.1990), we held likewise, and indicated that our benchmark for an attorneys' fee award in a successful class action is twenty-five percent of the entire common fund.").

However, it is in keeping with the typical amounts awarded in this circuit in similar small class actions. For example, "Several courts in the Ninth Circuit have held in wage and hour class actions that a 30% or higher award is appropriate." *Bell v. Consumer*

*Cellular, Inc.*, No. 3:15-CV-941-SI, 2017 WL 2672073, \*12 (D. Or. June 21, 2017), citing *Miller v. CEVA Logistics USA, Inc.*, No. 2:13-CV-01321-TLN, 2015 WL 4730176, \*8 (ED Cal. Aug 10, 2015) (noting that courts in the Ninth Circuit "usually award attorneys' fees in the range of 30-40% in wage and hour class actions" where the common fund is under $10 million). Courts have commonly approved awards of approximately 33% in such cases. *Id.*, citing *Deaver v. Compass Bank*, No. 13-CV-00222-JSC, 2015 WL 8526982, \*9 (ND Cal Dec 11, 2015); *Lusby v. GameStop Inc.*, 2015 WL 1501095, \*4 (ND Cal Mar 31, 2015); *Burden v. SeleciQuote Ins. Servs.*, 2013 WL 3988771, \*5 (ND Cal Aug 2, 2013); *Barbosa v. Cargill Meat Sols. Corp.*, 297 FRD 431, 450 (ED Cal 2013); *Franco v. Ruiz Food Prod., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, \*18 (ED Cal Nov 27, 2012); *Garcia v. Gordon Trucking, Inc.*, 2012 WL 5364575 (ED Cal Oct 31, 2012); *Vasquez, v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482 (E.D. Cal. 2010); *Romero v. Producers Dairy Food Inc.*, 2007 WL 3492841, \*4 (ED Cal Nov. 14, 2007). The fact that plaintiffs' counsel is absorbing the costs, litigation expenses, and administration expenses of the multiple-payment-over-time settlement of the case further supports the award of one third of the gross settlement amount as fees.

Thus, the expected fees negotiated as part of the settlement agreement were reasonable.

## 2) Fees are also proportionate compared to actual payout

In addition to the expected fees, the actual fees to be distributed to plaintiffs' counsel are not disproportionate to the distribution to the class members. Courts analyze this factor by imagining a purported constructive common fund, adding up all of the money that the defendant will actually be paying and comparing it to the requested fee. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 945 (9th Cir. 2011) (identifying

**Joint motion for preliminary class/collective approval**    Page 24

purported constructive common fund as $962,000, adding the "$800,000 allotment for attorneys' fees, the $12,000 allotment for an incentive award, the $100,000 *cy pres* award, and the $50,000 allotment for fees" to reach this figure).

In our case, the purported constructive common fund totals $78,016.61 ($21,800 in Guarantee Funds, $5,100 in Claimable FLSA Funds actually claimed, $3,116.61 in Rule 23 Claimable Funds actually claimed, $15,000 in incentive awards to the named plaintiffs, and $33,000 in attorney fees/costs/expenses). The requested $33,000 attorney fee/cost/expense award represents 42% of the total constructive common fund, and is approximately equal to the $30,016.61 in damages to be distributed to the class members (not including incentive payments).

These figures are within the range approved by other district courts in this Circuit as non-collusive. *Compare, e.g.*, *Norris v. Mazzola*, No. 15-CV-04962-JSC, 2017 WL 6493091, *9 (N.D. Cal. Dec. 19, 2017) (fee request of $858,751, which was 80% of the class payout of $1,076,255, "does not suggest collusion"); *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *13 (C.D. Cal. Mar. 10, 2014) (when requested fees of $150,000 was 70% of $215,000 class award, "the first sign of collusion is not present here"); and *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012) ("The court estimates that the settlement pool, particularly with the reduction in the fee award to class counsel, will exceed the fee award of $1,160,000. These small disparities are in sharp contrast to those in recent cases like *Bluetooth*"); and *Harris v. Vector Mktg. Corp.*, No. C-08-5198-EMC, 2012 WL 381202, *5 (N.D. Cal. Feb. 6, 2012) ("fees are now on par with the money to the class and the cy pres combined (roughly 1:1). The Court is not faced with a situation where fees are disproportionate to the class award as in *Bluetooth*."), with *In re Bluetooth Headset Prod. Liab. Litig.*, 654

F.3d 935, 947 (9th Cir. 2011) (noting that "award of attorneys' fees up to eight times the monetary *cy pres* relief afforded the class" was disproportionate, especially given zero monetary relief directly to the class) and *Harris v. Vector Marketing Corp.,* No. C–08–5198, 2011 WL 4831157 (N.D.Cal. Oct. 12, 2011) (disapproving an agreement that awarded class counsel $4 million, while the expected payout to the class was approximately $1 million.).

In addition to the ratio itself, courts have found other facts to support a finding of no collusion with regard to the proportionate distribution element. These include the fact that the requested fee award includes reimbursable out-of-pocket costs (*Keegan v. Am. Honda Motor Co, Inc.,* No. CV-10-09508-MMM-AJWx, 2014 WL 12551213, *18 (C.D. Cal. Jan. 21, 2014)). As noted previously, plaintiffs' counsel is not seeking a separate award of costs, litigation expenses, or settlement administration expenses in this case.

For the above reasons, we submit that both the actual and expected distributions to the class and to plaintiffs' counsel are proportionate and do not suggest collusion.

### b) The agreement does contain a clear sailing provision, but no kicker

The settlement agreement does contain a "clear sailing" provision, in that ROBERTI agreed not to contest plaintiffs' counsel's attorney fee petition for up to 33% of the gross settlement value. "As the Ninth Circuit has explained, however, a clear sailing provision does not signal the possibility of collusion where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." *In re High-Tech Employee Antitrust Litigation*, 11-cv-02509-LHK, 2015 WL 5158730, *14 (N.D. Cal. Sep. 2, 2015) (internal quotations omitted) (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)); *see also Bayat v. Bank of the West*, No. C-13-2376 EMC, 2015 WL 1744342, *7 (N.D. Cal. Apr. 15, 2015) ("because any attorneys'

fees award will come out of the common fund, there is no 'clear sailing' agreement here that would warrant against settlement approval").

In the current settlement, any un-awarded fees/costs/incentive payment will be disbursed to the class members. There is no "kicker" provision that would otherwise have returned any un-awarded fees to ROBERTI. "As the Ninth Circuit has noted, moreover, the inference of collusion drawable from a clear sailing provision is reduced when the agreement lacks a reversionary or 'kicker provision'." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA) Litig*., 295 F.R.D. 438, 458 (C.D. Cal. 2014), citing *In re Bluetooth,* 654 F.3d at 949. This factor therefore does not weigh against settlement approval. *Smith v. Am. Greetings Corp*., No. 14-CV-02577-JST, 2016 WL 2909429, *7 (N.D. Cal. May 19, 2016) (so stating).

### c) There is no reversion of attorney fees

*In re Bluetooth* did not flag settlement reversions in general as a warning sign of potential collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 949 (9th Cir. 2011). Rather, it identified the reversion of clear-sailing attorney fees to the defendant as the warning sign. *Id*. To be sure, whether or not unclaimed settlement funds revert to the defendant is a consideration in determining the overall fairness of a settlement. But that was the case before *In re Bluetooth*. As a warning sign of potential collusion, the inquiry focuses on the reversion of unawarded attorney fees.

And although some courts have noted difficulties associated with a "kicker" provision, such provisions cut both ways. When attorney fees are paid independently from (*i.e.*, without deduction from and without reversion to) the class's recovery, one could picture a plaintiffs' counsel becoming disincentivized to maximize that class recovery. However, other courts have viewed that as a positive, *supporting* settlement approval, because

each class member will receive their full recovery regardless of the amount of attorney fees awarded. *See, e.g.*, *Shvager v. ViaSat, Inc.*, No. CV-12-10180-MMM-PJWx, 2014 WL 12585790, *14 (C.D. Cal. Mar. 10, 2014) ("This is not, moreover, a case in which ViaSat has agreed to pay a lump sum that will be apportioned among class members and their attorneys. Rather, the settlement agreement provides that each class member will receive his or her *pro rata* share—approximately $141.99 per person.... The $150,000 negotiated cap on attorneys' fees is separate, and is not deducted from the class recovery. The fact that the settlement does not contemplate a common fund from which both class members and counsel will be paid mitigates, to some extent, the collusive nature of the inherent kicker provision."); *Shames v. Hertz Corp.*, No. 07–CV–2174–MMA (WMC), 2012 WL 5392159, *14 (S.D. Cal. Nov. 5, 2012) ("[T]he attorneys' fees ... are wholly separate from the class settlement—and will have no impact one way or the other on the amount the class recovers—a 'savings' for Defendants [should the court not grant the full amount of negotiated attorneys' fees] does not implicate the concerns the Ninth Circuit expressed about the 'kicker' provision in the *Bluetooth* settlement").

In any event, there is no attorney fee reversion in our case. All funds not awarded to counsel or the named plaintiffs will be distributed to the class and collective members. This removes the third *In re Bluetooth* factor from the case.

## 8. Application

We have discussed the application of the *In re Bluetooth factors* above. "For all these factors, considerations, subtle signs, and red flags, however, the underlying question remains this: Is the settlement fair? The factors and warning signs identified in *Hanlon*, *Staton*, *In re Bluetooth*, and other cases are useful, but in the end are just guideposts. The relative degree of importance to be attached to any particular factor will depend

upon the unique facts and circumstances presented by each individual case. Deciding whether a settlement is fair is ultimately an amalgam of delicate balancing, gross approximations and rough justice, best left to the district judge, who has or can develop a firsthand grasp of the claims, the class, the evidence, and the course of the proceedings— the whole gestalt of the case. Accordingly, the decision to approve or reject a settlement is committed to the sound discretion of the trial judge." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018) (internal citations and quotations omitted). *See also*, *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 448 (C.D. Cal. 2014) ("It must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation," citations omitted).

It is also worth noting that even in *In re Bluetooth*, the seminal case establishing the factors of the collusion analysis, the trial court affirmed the settlement on remand despite the presence of all three "red flags" identified on appeal.

With that background, we discuss below several factors that weigh against a finding of collusion.

### a) The notice process was fair and fairly implemented

One of the concerns that courts have expressed when dealing with a reversion is that it incentivizes the defendant to negotiate for a more difficult claims process. Here, there was a 29.3% opt-in rate. That compares favorably with average opt-in rates in similar wage-and-hour class actions. *See, e.g.*, Andrew C. Brunsden, *Hybrid Class Actions, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 BERKELEY J. EMPL. LAB. LAW 269, 294 (2008) ("The average opt-in rate for the twenty-one cases analyzed in

the Table is 15.71%.").

Notice was distributed by both email and by first-class mail, which has been described as the "gold standard" for class notice. *See, e.g.*, *Good v. Am. Water Works Co., Inc.*, No. CV-2:14-01374, 2016 WL 5746347, *7 (S.D.W. Va. Sept. 30, 2016) (so stating). *See also*, MANUAL FOR COMPLEX LITIGATION (FOURTH) at 287 ("When the names and addresses of most class members are known, notice by mail usually is preferred."). We also re-mailed any returned notices to the most recent addresses obtainable on the national address database OpenOnline, and achieved a 95% mail delivered rate (with only 6 of the 109 notice packets not deliverable by mail). Egan Dec. at ¶ 2. Of the class members not reachable by mail, however, all of them had email addresses, and none of the emails were returned as undeliverable. *Id*. at ¶ 3. Thus, an aggregate 100% deliverable rate was achieved. *Id.*

**b) The case was fought before it was settled**

The fact that the parties litigated the case, including an opposed motion to quash and an opposed motion to strike defenses on the merits, before engaging in settlement negotiations militates against a finding of collusion. *See, e.g.*, *Shames v. Hertz Corp.*, No. 07-CV-2174-MMA-WMC, 2012 WL 5392159, *15 (S.D. Cal. Nov. 5, 2012) ("The protracted and hard-fought nature of this case further militates against the existence of collusion. ... [H]ad the parties sought to collude, they would have been much more likely to reach a collusive settlement as quickly and cheaply as possible to minimize their costs and attorney time while maximizing their personal recovery."); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 259 (N.D. Cal. 2015) ("Moreover, the Court finds no evidence of explicit collusion here, where, after litigating several rounds of motions to dismiss, the parties engaged in settlement talks overseen by a neutral mediator for

several weeks before agreeing on this settlement.").

### c) Participation of mediator and course of negotiations

While this case did not involve the participation of a mediator, the parties in this case held several months of settlement negotiations. This factor is therefore either neutral or supports approval of the settlement.

### d) The class achieved an excellent result

As discussed above, this case involves somewhat technical violations of the law—small wrongful deductions and tips that were distributed to non-front-of-the-house employees but were, for the most part, not retained by management. As a result of this settlement, all class members (whether or not they opted in) will be paid all statutory damages applicable to the wrongful deduction claims, which far exceed the wrongful deductions themselves.

In addition to receiving all of their wrongful deduction damages, the front-of-the-house class members were given the option to opt in to the class and collective in order to obtain a partial repayment of unpaid tips from ROBERTI, limited only by the parties' good-faith determination of these uninsured one-location-restaurant defendants' ability to pay.

## II. Conclusion

For the above reasons, the parties jointly move for an Order:

1.  Finally certifying for settlement purposes the Rule 23(b)(3) class of "all current and former hourly restaurant employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2013 who do not file a timely request to opt-out of the Class";

2.  Finally certifying an FLSA collective of "all current and former hourly restaurant

employees of ROBERTI who received a paycheck for work performed in Oregon on or after November 29, 2016 who file a timely opt-in to the Collective";

3. Finally approving the settlement as fair, reasonable, and adequate;

Respectfully Submitted by:

JON M. EGAN, PC

DATED:  October 8, 2021                    *s/ Jon M. Egan*
By_____
Jon M. Egan, OSB No. 002467
jegan@eganlegalteam.com
Attorney for Plaintiffs

JACKSON LEWIS P.C.

DATED:  October 8, 2021             *s/ Mark Crabtree by Jon M. Egan with email permission*
By_____
Mark A. Crabtree, OSB No. 015070
Mark.Crabtree@jacksonlewis.com
Attorneys for Defendants